# REYNOLDS *v.* CRAWFORDSVILLE FIRST NATIONAL BANK.

**APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF INDIANA.**

Submitted November 10, 1884.—Decided November 24, 1884.

After a cause in equity has been set down for hearing on bill and answer, it is too late to move to dismiss, under Equity Rule 66, for want of replication.

A bill in equity, in Indiana, which avers that a deed is void on its face, and an answer which does not deny the averment, will support the jurisdiction of the Circuit Court of the United States in that district to quiet the title of the complainant as against the deed. *Holland* v. *Challen*, 110 U. S. 15, affirmed.

The fact that a national bank, at a judgment sale of real estate mortgaged to it, purchases the mortgaged property and also other property not secured by the mortgage, does not invalidate the title to the mortgaged property which § 5137 Rev. Stat. authorizes the bank to acquire.

This was a bill in equity to quiet title and restrain waste, filed by the appellee, The First National Bank of Crawfordsville, Indiana, against the appellant, Harris Reynolds.

The bill alleged in substance that on August 18, 1875, Reynolds was indebted to the bank in the sum of $7,000, which was evidenced by his note of that date and amount, with Isaac M. Vance and James H. Watson as sureties; and that on the day just mentioned, in order to indemnify the sureties, Reynolds executed a mortgage on certain real estate; that on September 17, 1877, Reynolds executed to the bank another mortgage on the same lands to secure an additional sum of $3,000 which he at that date owed the bank; that on August 30, 1878, Reynolds was adjudged a bankrupt, and John W. Baird was appointed assignee of his estate; that on April 18, 1879, the assignee reported to the bankruptcy court that no assets of the bankrupt had come to his hands and no debts been proven against his estate, whereupon the estate was settled and both the assignee and the bankrupt discharged; that before the discharge of the assignee, to wit, on April 11, 1879, Reynolds stated to the bank that no claims had been proven against his estate, and that the register in bankruptcy

had given him a writing showing that fact, and also showing that the title to the real estate covered by the mortgage to the bank·had re-vested in him; that relying upon this statement the bank agreed with Reynolds, Vance and Watson that it would release the two latter from their liability on the note for $7,000, in consideration of which Vance and Watson agreed to pay the bank a certain sum of money and assign to it the mortgage executed to them by Reynolds for their indemnity, and Reynolds agreed to convey the mortgaged property to the bank, but was to be allowed to retain possession thereof until March 1, 1880, and that these agreements were executed; that afterwards the bank purchased a certificate of purchase at sheriff's sale of a certain part of the mortgaged premises which had been sold upon a judgment senior to the mortgage to the bank, and at the expiration of the time for redemption took a sheriff's deed for the land described therein; that the bank was compelled to pay $1,286.60 in discharge of a school-fund mortgage upon the real estate mortgaged to it; that the bank purchased from Ann Smith a decree against said land, and took an assignment thereof to itself; that "said purchases and assignments were made upon the faith of the agreement and deed of Reynolds, and for the purpose of saving expense of foreclosing said liens, and that the amount of liens so held . . . was fully equal to the value of said real estate at the time of said agreement;" that Reynolds, for the purpose of annoying complainant and casting a cloud upon its title and delaying it in getting possession, claimed that after the execution of the deed to the bank, Baird, the assignee, executed to him a quit-claim deed for the same real estate, under which he claimed to be the owner; that this deed was wholly inoperative, null and void, because the interest which it purported to convey never had passed from Reynolds, and because it was made without any authority from the bankruptcy court, and because it was executed by a party out of possession, and as to whom there was an adverse possession.

It was averred, in an amendment to the bill, that the deed from Baird, the assignee, to Reynolds was executed after the latter had made his deed to the bank; that Reynolds had

caused the deed of the assignee to himself to be recorded, and that under it he was asserting a title paramount to that of the bank, and was threatening to commit waste, and was insolvent. The prayer of the bill was for a decree quieting the title of the bank and enjoining waste by Reynolds.

The answer of Reynolds was filed September 20, 1880. It admitted that he was indebted to the bank, as charged in the bill, in the sum of $7,000, for which Vance and Watson were his sureties, and that he had executed to them the indemnifying mortgage mentioned in the bill; it admitted the averments in respect to his bankruptcy, but denied that he had made to the bank the representations that the assignee in bankruptcy had given him a statement in writing showing that no debts had been proven against his estate in bankruptcy, and that the title to his real estate had become re-vested in him. The answer averred that prior to the execution of the deed by Reynolds to the bank, the latter proposed to him that it would pay off all his debts which were liens upon his real estate, and permit him to retain possession thereof until March 1, 1880, on condition that Reynolds would convey to the bank, by quit-claim deed, the mortgaged premises, and upon the further condition that Vance and Watson would convey to the bank, by deed of warranty, two hundred acres of land owned by them, and that this proposition was accepted; that the consideration for the said contract between Reynolds, Watson, Vance, and the bank, pursuant to which he executed the quit-claim deed to the bank, was this undertaking and agreement of the bank; that Vance and Watson complied on their part with the agreement, and conveyed, with covenants of warranty, to the bank two hundred acres of land owned by them; that it was upon the faith of this agreement, and none other, that the quit-claim deed was executed by Reynolds; that when this agreement was entered into the estate in bankruptcy of Reynolds was unsettled, as the bank knew, and that the purchase of the sheriff's certificates and other purchases made and assignments taken by the bank, were in violation of the agreement under which Reynolds made the deed to the bank.

The answer admitted the execution and delivery of the deed

from Baird, the assignee, to Reynolds, and that Reynolds was claiming whatever title the deed conferred on him, and denied that he had threatened to commit waste on the premises.

On May 3, 1881, the cause was set down for hearing on May 11th, on bill and answer by counsel for the bank, and of this the defendant had immediate notice. On the day fixed for the hearing the counsel for Reynolds moved the court to dismiss the bill for failure of the complainant to except to the answer or to file replication thereto.

The motion to dismiss the bill was overruled. The cause was then heard upon bill and answer, and the court found that the equity of the case was with the complainant; that the material averments of the bill, as amended, were true, except the averment as to waste and threatened waste; that the various instruments set forth in the bill had been executed as charged; that Baird, the assignee in bankruptcy, had executed the deed to Reynolds as charged; that this deed was "wholly inoperative, null and void," and that the assertion of title thereunder cast a cloud upon complainant's title; and that the complainant was the owner of and entitled to the possession of the real estate in controversy. A decree was entered on these findings quieting complainant's title and declaring the deed from Baird to Reynolds void. From that decree Reynolds appealed.

*Mr. D. W. Voorhees* and *Mr. T. F. Davidson* for appellant.

*Mr. Joseph E. McDonald, Mr. John M. Butler*, and *Mr. Augustus L. Mason* for appellee.

MR. JUSTICE WOODS delivered the opinion of the court. He stated the facts in the foregoing language, and continued:

The first complaint of the appellant is that the court overruled his motion to dismiss the bill, the appellee having failed to file a replication to the answer within the time prescribed by the equity rules. The motion was properly denied. The sixty-sixth equity rule provides that "whenever the answer of the defendant shall not be excepted to, or shall be adjudged or

deemed insufficient, the plaintiff shall file the general replication thereto on or before the next succeeding rule day thereof. . . . If the plaintiff shall omit or refuse to file such replication within the prescribed period, the defendant shall be entitled to an order, as of course, for a dismissal of the suit, and the suit shall thereupon stand dismissed, unless the court, or a judge thereof, shall, upon motion for cause shown, allow a replication to be filed *nunc pro tunc*, the plaintiff submitting, to speed the cause, and to such other terms as may be directed."

The rule thus places it in the defendant's power to compel the complainant to put the cause at issue or to go out of court. The complainant always has the option of setting the case down for hearing on bill and answer instead of filing a replication, and if the defendant neglects to enter the order for the dismissal of the suit for want of replication until after the cause has been set down for hearing on bill and answer, a motion by the defendant to dismiss the suit for want of replication is incongruous and untimely. On setting the cause down for hearing on bill and answer the case is put at issue, the answer becomes evidence (Equity Rule 41, clause 2), and the only evidence the defendant needs, for it must be taken as true in all respects. *Brinkerhoff* v. *Brown*, 7 Johns. Ch. 217; *Grosvenor* v. *Cartwright*, 2 Cas. Ch. 21; *Barker* v. *Wyld*, 1 Vern. 140; *Perkins* v. *Nichols*, 11 Allen, 542; *Dale* v. *McEvers*, 2 Cow. 118. There is, therefore, no necessity for a replication or for the taking of testimony. The setting the case down for hearing on bill and answer is in effect a submission of the cause to the court by the complainant, on the contention that he is entitled to the decree prayed for in his bill upon the admissions and notwithstanding the denials of the answer. It is plain, therefore, that after the cause had been so set down the motion of defendant to dismiss the suit for want of the timely filing of the replication came too late and was rightly overruled.

The appellant next complains of the decree rendered by the Circuit Court, and his first objection is, that the court had no jurisdiction to quiet the title of the appellee as against a deed

averred by the bill and not denied by the answer to be void on its face. The contention is that a deed, void on its face, is not a cloud upon the title, and a claim of title under it is no ground for the interference of a court of equity. This objection is not tenable. It may be conceded that the legislature of a State cannot directly enlarge the equitable jurisdiction of the Circuit Courts of the United States. Nevertheless, an enlargement of equitable rights may be administered by the Circuit Courts as well as by the courts of the States. *Broderick's Will,* 21 Wall. 503, 520. And although a State law cannot give jurisdiction to any federal court, yet it may give a substantial right of such a character, that when there is no impediment arising from the residence of the parties, the right may be enforced in the proper federal tribunal, whether it be a court of equity, admiralty, or common law. *Ex parte McNeil,* 13 Wall. 236, 243.

While, therefore, the courts of equity may have generally adopted the rule that a deed, void upon its face, does not cast a cloud upon the title which a court of equity would undertake to remove, we may yet look to the legislation of the State in which the court sits to ascertain what constitutes a cloud upon the title, and what the State laws declare to be such the courts of the United States sitting in equity have jurisdiction to remove. This was expressly held in the case of *Clark* v. *Smith,* 13 Pet. 195, 203, where it was said by this court: "Kentucky has the undoubted power to regulate and protect individual rights to her soil, and to declare what shall form a cloud on titles; and having so declared, the courts of the United States, by removing such clouds, are only applying an old practice to a new equity created by the legislature." . . .

The State of Indiana, where the present case arose, has declared by statute what kind of a claim against real estate is such a cloud upon the title as will support a suit to remove it. § 1070 Rev. Stat. of Indiana, 1881, provides as follows: "An action may be brought by any person, either in or out of possession, or by any one having an interest in remainder or reversion, against another who claims title to or interest in real property adverse to him, although the defendant may not be

in possession thereof, for the purpose of determining and quieting the question of title."

This act confers upon any one, against whom another, whether in or out of possession, claims an adverse title or interest in real estate, the substantial right of having the disputed title settled by action of the courts.

Under this statute it has been decided by the Supreme Court of Indiana that it is sufficient to aver that the defendant claims some interest or title, or pretended interest or title, adverse to complainant, without stating what the title is. *Marot v. The Germania Building Association,* 54 Ind. 37; *Jeffersonville, &c., Railroad Co.* v. *Oyler,* 60 Ind. 383.

The bill of complainant in this case complies with this rule by averring that "said Reynolds is, under his deed" (from Baird, the assignee), "claiming and asserting title paramount to the title of this complainant;" and the answer of the defendant admits that, under the deed executed to him by Baird, he is claiming whatever title to said lands the same confers on him.

The question whether, under such a statute as that of Indiana and under the facts stated, the Circuit Court had jurisdiction to render the decree complained of, has been, in effect, decided in the affirmative by this court in the case of *Holland* v. *Challen,* 110 U. S. 15.

In that case, a statute of Nebraska was under review, which provided that "an action may be brought and prosecuted to final decree by any person, whether in actual possession or not, claiming title to real estate against any person who claims an adverse interest therein, for the purpose of determining such interest and quieting the title." The court, speaking by Mr. Justice Field, declared in substance that this statute dispensed with the general rule of courts of equity, that, in order to maintain a bill to quiet title, it was necessary that the party should be in possession, and, in most cases, that his title should be established at law or founded on undisputed evidence or long-continued possession.

If the equity courts of the United States in Nebraska could dispense with these well-established rules of equity, and admin-

ister the rights conferred by this statute, it is not open to question that, in this case, the Circuit Court could disregard a similar rule, and entertain jurisdiction of the appellee's case, and accord to him the rights conferred by the statute law, even though the deed under which the appellant claimed was void on its face.

As the same statute authorizes the court to take cognizance of the case even when the title of defendant amounts to more than a mere cloud, and applies in every case when the defendant claims an adverse interest in or title to the property in controversy, it is clear that the assignment of error under consideration has no support.

It is next objected to the decree of the Circuit Court that the appellee's title was itself doubtful, and the bill should for that reason have been dismissed. But it is apparent that the appellant was entitled in equity to all of his estate in bankruptcy not required for the payment of his debts. This estate, as appears by the averments of the bill not denied by the answer, was subject to mortgage and other liens held by the appellee equal in amount to its full value. When, therefore, no debts having been proven against his estate, the appellant was discharged, and his assignee in bankruptcy had fully settled the estate, the quit-claim deed executed by the former to the appellee vested in the latter a clear equitable title to the premises in controversy, and this was sufficient under the Indiana statute to justify the relief prayed for in the bill.

The appellant next insists that the appellee, being a national bank, had no power under the act establishing national banks, to take a conveyance of the two hundred acre tract of land from Vance and Watson, and that, as such a conveyance formed a part of the agreement by which the appellee acquired title to the land conveyed to it by the appellant, the title to the latter tract is void.

The national banking law, Revised Statutes, § 5137, provides that a national banking association may purchase such real estate as shall be mortgaged to it in good faith by way of security for debts previously contracted. The power to purchase the real estate in dispute, was, therefore, clearly conferred

by the statute. The fact that, in order to secure the same debt, it purchased other real estate not mortgaged to it, cannot affect the title to the land which it was authorized to purchase. But if there was any force in this objection to the title, it could not be raised by the debtor, for where a corporation is incompetent by its charter to take a title to real estate, a conveyance to it is not void but only voidable; the sovereign alone can object. It is valid until assailed in a direct proceeding instituted for that purpose. *National Bank* v. *Matthews,* 98 U. S. 621, 628; *National Bank* v. *Whitney,* 103 U. S. 99; *Swope* v. *Leffingwell,* 105 U. S. 3.

The appellant insists, further, that the appellee did not perform that part of his contract by which he agreed to pay off the debts of appellant, which were a lien upon the property in question: that the purchase of the sheriff's certificate and the purchase and transfer to himself of the decree in favor of Ann Smith, were not payment of the debts. This is an objection to the form rather than the substance of the transaction. The debts, so far as the original creditors are concerned, were satisfied, and this, together with their assignment to the appellee, who was under a contract with the appellant to pay them, was in substance and effect a payment. There is no averment that the appellee had any purpose to attempt their enforcement against the appellant, and if such attempt should be made it could not, in the face of the contract, succeed.

We think that the decree of the Circuit Court is sustained by the admissions of the answer, and that there is no error in the record.

*Decree affirmed.*