AMES REALTY CO. v. BIG INDIAN MINING CO. et al.

(Circuit Court, D. Montana. June 11, 1906.)

No. 668.

1. COURTS—ENFORCEMENT OF REMEDY GIVEN BY STATE STATUTES—SUITS RELATING TO WATER RIGHTS.

Civ. Code, Mont. § 1891, which provides that in actions for the protection of water rights the plaintiff may make any or all persons who have diverted water from the same stream or source parties, and the court may in one judgment settle the relative priorities and rights of all parties to the action, establishes a procedure substantially consistent with the ordinary modes of proceeding in chancery, and the rights thereby given may be enforced by a federal court of equity having jurisdiction of the suit by reason of diversity of citizenship.

[Ed. Note.—For cases in point, see vol. 13, Cent. Dig. Courts, § 972.]

2. SAME—JURISDICTION OF FEDERAL COURT—CROSS-BILLS.

In a suit in a federal court of equity to establish and protect rights in the waters of a stream against other separate appropriators of water from the same stream, all of whom are citizens of different states from complainant, the court may entertain cross-bills by any or all of the several defendants setting up priority of right as against complainant or their codefendants, since they relate to the subject of the original suit, which is the water of the stream, and, being ancillary to the original suit, the court has jurisdiction to determine the issues raised thereby without regard to the citizenship of the parties thereto.

In Equity. On questions of jurisdiction.

McConnell & McConnell, for complainant.
M. S. Gunn, for defendants.

HUNT, District Judge. Complainant, a corporation, resident and citizen of Missouri, brings this action to obtain an adjudication of the rights of itself and the defendants to the use of the waters of Prickly Pear creek and its branches and tributaries within the state of Montana, and for injunction against defendants, restraining them from diverting any of the waters of said creek and its tributaries until the prior

rights of complainant are first satisfied. There are about 90 defendants, some of whom are residents and citizens of Montana, while many are residents and citizens of other states. Complainant owns 1,926 acres of agricultural lands, which require irrigation. It alleges that in 1865 and 1866 its predecessors in interest tapped the waters of Prickly Pear creek by means of certain ditches, and carried the waters of said creek upon the said lands, and irrigated the same, and made appropriations of such waters to the extent of 404 inches, and said quantity of said waters has been used upon said lands ever since such appropriations, and is necessary now to the enyoyment of the lands of this complainant. Complainant alleges that the defendants, and each and every of them, claim some right to the use of the waters of said Prickly Pear creek or its tributaries, all of which said tributaries empty into the Prickly Pear creek above the points where complainant diverts its water, and that the waters of the tributaries are necessary in order to swell the waters of the main Prickly Pear creek, so that complainant and other prior appropriators to defendants may satisfy their prior rights. It is alleged that defendants are appropriating large quantities of the waters of Prickly Pear creek and its tributaries, and threaten to continue to do so, and thereby to exhaust the waters, so that complainant will be deprived of the use of water for its lands, and greatly damaged thereby. Complainant sets forth that all the rights claimed by the defendants, or any of them, are subsequent to the rights of complainant, and that, unless defendants are restrained from diverting and turning away the waters of Prickly Pear creek and its tributaries by means of ditches, complainant will be unable to cultivate its lands. It is set forth that, by reason of the diverse interests of each of the defendants, it is necessary that all and every of the claimants of the waters of Prickly Pear Creek and its tributaries be made and joined as defendants, in order to avoid a multiplicity of suits.

A number of the defendants have filed cross-bills, wherein each cross-complainant sets forth the substance of complainant's bill, pleads title to certain lands in the Prickly Pear valley, and that the lands described in the cross-complaint are agricultural lands, and have been irrigated with the waters of Prickly Pear creek by means of ditches carrying certain quantities of the waters of said creek, appropriated prior to the alleged dates of appropriation of the complainant. Cross-complainants allege that the lands they own are patented, and that they and their predecessors in interest have had open, notorious, continuous, uninterrupted, and adverse use, possession, and enjoyment of specified numbers of inches of waters of Prickly Pear creek, as against the complainant and other cross-complainants who are codefendants mentioned in the complainant's bill, and all other persons. They allege that the complainant, and their codefendants mentioned in complainant's bill, claim some right, title, or interest, by virtue of appropriations, to the use of the waters of the said Prickly Pear creek and its tributaries, and are using the same; but they aver that the rights of the complainant and their codefendants are subordinate and subservient to the rights of cross-complainants, and that it is necessary that an adjudication be had of the amounts of water to which the

cross-complainants and the complainant and the defendants named are entitled, and that the cross-complainant's rights to the use of the waters of the creek, or of the tributaries of the creek, from which they allege they are using waters, be quieted by decree of the court. They ask for an injunction, restraining the complainant and all other parties to the suit, and each and every of them, from in any manner interfering with the rights of the cross-complainant filing the bill, to the end that such cross-complainant may have the use of the waters of the tributary creek or main creek, according to his rights, as may be set forth in the particular cross-complaint.

No testimony has as yet been taken in the case. Counsel for several of the defendants, who have merely answered, present a question of jurisdiction by contending that there is no jurisdiction in this court to adjudicate the claims of cross-complainants where there is no diversity of citizenship, and no jurisdiction to enter a decree determining the relative rights of all the parties to the suit in and to the waters of the stream from which complainant claims to have made an appropriation. Counsel for answering defendants and for complainant have presented their views to the court, asking that a ruling should be had before testimony may be taken, to the end that the evidence may be confined to issues properly triable in this court.

The learned counsel for complainant argues that section 1891 of the Civil Code of Montana authorizes this court in one judgment to settle the relative priorities and rights of all the parties to the action, and that it lawfully has made parties to the action all persons who have diverted water from the Prickly Pear creek. His contention is that the subject for litigation tendered to the defendants by the bill of complaint is the stream of water known as Prickly Pear creek and its tributaries; that while the plaintiff only claims 404 inches of water, or rather the right to the use of 404 inches of the waters of the stream described, it is not a separate or separable part of the waters of such stream; that it is a usufruct right as against each and every one of the defendants; and that complainant's right to use the waters claimed by it depends upon the relative priorities of the parties. Placing stress upon the point that the amount claimed by the complainant may be controverted, he invokes broad principles of equity, which he says will not permit all the defendants to be sued simply to litigate the right of the complainant to waters as against each one of the defendants singly, but will uphold a jurisdiction to make a complete determination of the entire controversy among the users of the waters of the stream by allowing each defendant by cross-bill to set up his own right, and thus adjust all the claims in controversy in one suit. This argument needs find its foundation in the general application of the practice expressly recognized by the Codes of the state relating to actions to protect water rights to the equity practice of the federal courts. Section 1891 of the Civil Code of Montana is as follows:

"In any action hereafter commenced for the protection of rights acquired to water under the laws of this state, the plaintiff may make any or all persons who have diverted water from the same stream or source parties to such action, and the court may in one judgment settle the relative priorities and rights of all the parties to such action. When damages are claimed for the

wrongful diversion of water in any such action, the same may be assessed and apportioned by the jury in their verdicts, and judgment thereon may be entered for or against one or more of several plaintiffs, or for or against one or more of several defendants, and may determine the ultimate rights of the parties between themselves. In any action concerning joint water rights or joint rights in water ditches, unless partition of the same is asked by parties to the action, the court shall hear and determine such controversy as if the same were several as well as joint."

A cross-bill is often filed to obtain affirmative relief for the defendant in the original suit, to obtain a discovery in aid of the defense in that suit, to enable the defendant to interpose a more complete defense than that which he could interpose by answer, or to obtain full relief to all parties, and a complete determination of all controversies which arise out of the matters charged in the original bill. The Court of Appeals of the Eighth Circuit held in Springfield Milling Co. v. Barnard & Leas Mfg. Co., 81 Fed. 263, 26 C. C. A. 389, that if a cross-bill "fairly tends to accomplish either of these purposes," it is generally a sufficient ground for its interposition. Section 399, Story on Equity Pleading, says a cross-bill is to be treated as a mere auxiliary suit, or as a dependency upon the original suit. In Cross v. De Valle, 1 Wall. 1, 17 L. Ed. 515, the Supreme Court of the United States quote this language of Judge Story, and, proceeding, say:

"It may be brought by a defendant against the plaintiff in the same suit, or against other defendants, or against both, but it must be touching the matters in question in the bill," etc.

In Remer v. McKay (C. C.) 38 Fed. 164, Judge Blodgett analyzed a pleading by answering the question whether the cross-bill was "germane to the subject-matter of the original bill." And in Morgan's Co. v. Texas Central Railway, 137 U. S. 171, 11 Sup. Ct. 61, 34 L. Ed. 625, the Supreme Court again quote Mr. Justice Story as follows:

" 'A cross bill,' says Mr. Justice Story (Eq. Plead. § 389), 'ex vi terminorum, implies a bill brought by a defendant in a suit against the plaintiff in the same suit, or against other defendants in the same suit, or against both, touching the matters in question in the original bill. A bill of this kind is usually brought either (1) to obtain a necessary discovery of facts in aid of the defense to the original bill, or (2) to obtain full relief to all parties touching the matters of the original bill.' And, as illustrative of cross-bills for relief, he says (section 392): 'It also frequently happens, and particularly if any question arises between two defendants to a bill, that the court cannot make a complete decree without a cross-bill or cross-bills, to bring every matter in dispute completely before the court, to be litigated by the proper parties and upon the proper proofs.' "

Chief Justice Fuller writes of jurisdiction over the subject-matter, and says that "the subject-matter" of the cross-bill must be the same as that embraced in the original bill, and if it is the court will grant relief.

In Badger G. M. & M. Co. v. Stockton G. & C. M. Co. (C. C.) 139 Fed. 838, Judge Gilbert for the court of appeals sustains the doctrine that where facts are alleged in a cross-bill not alleged in the original bill, "but which are directly connected with the subject-matter of the original suit, and prays affirmative relief directly connected with and arising out of the matters of the original suit, and germane to the

same, the court will order the cause to be retained for final hearing and decree upon the cross-bill." What, then, are matters directly connected with the subject-matter of the original suit? In proceeding to a brief analysis, let us not confuse the question by misunderstanding the object of the action. The complainant herein, the Ames Realty Company, prays for a decree fixing its rights to the use of 404 inches of the waters of Prickly Pear creek, and for injunction restraining all defendants who claim rights from diverting water until complainant's prior rights are satisfied. The object of this action is, therefore, what the Ames Realty Company endeavors to obtain—a decree that it is entitled to the prior use of 404 inches of water, and an order of court which will prevent all defendants from interfering with it in the enjoyment of such prior right of use. Plainly, therefore, the object of the action is the remedy asked, and which may be finally awarded. It is something ahead—a future result—which is sought. This object, however, is something apart from the subject-matter of the suit, and, as said, the subject-matter being the point which we are here inquiring into, let us proceed further. Substantial accord is to be found among the books in the discussion of what is meant by the subject-matter of the action. It is scarcely necessary to state that clearly it is not the cause of action here, for the cause of action springs out of the primary lawful rights of the Ames Realty Company to the use of 404 inches of the waters of Prickly Pear creek, the duty of the defendants not to interfere with such right, and the breach thereof by the improper diversion of water by the defendants in the modes described in complainant's bill. These elements constitute the cause of action, and from them the Ames Realty Company's right of action has arisen. Speaking exactly, the subject-matter involved is the right to use the physical thing—the flowing water—susceptible of use for wetting the lands belonging to the Ames Realty Company and other owners. "Subject-matter of the action," writes Pomeroy on Code Remedies, § 369, "rather describes the physical facts, the things real or personal, the money, lands, chattels, and the like in relation to which the suit is prosecuted." I am not losing thought of the distinction between the right to use the physical thing and the thing itself—the incorporeal from the corporeal. There is, of course, no exclusive ownership of the water itself. A right to use for beneficial purposes is the right involved. Nevertheless, the right of use of the physical thing becomes, in these water right cases, so identified with the water, that in ascertaining by strict analysis what is the subject-matter of the action, we find that the water itself is that in relation to which complainant prosecutes its suit, and so the water really becomes the subject of the action, in so far as there is a thing physical or real involved in the suit. Now these cross-complainants severally allege that they own rights in and to the waters of the Prickly Pear anterior to those alleged in the bill of complainant; moreover, they say that complainant and their co-defendants are violating these rights by diverting the waters of the creek, and they demand relief by injunction.

For the purposes of this discussion, judicial knowledge may be taken of the fact that Prickly Pear creek is not a very large stream, and that

in midsummer its waters diminish greatly; indeed, it is but a statement which counsel would surely accept as of common knowledge that never does the Prickly Pear creek carry enough water to enable all the farms throughout the valley to receive during the irrigating season the full benefit of the water rights claimed by valid but ineffectual appropriations. Despite the most careful husbanding of the waters, much land suffers from drouth, and the many appropriators along the creek and its tributaries are obliged to protect their rights with the utmost vigilance, lest their crops languish for moisture. Such circumstances well illustrate the somewhat peculiar nature of the right of use of water from a stream of limited flow. Of course, there is no way of singling out certain specific water as belonging to any one appropriator. For instance, the use of a small quantity (404 inches) is all complainant in this case alleges it is entitled to. Such a quantity is doubtless considerably less than the whole stream. There is no ownership in kind, at least before the water complainant claims has passed into its own ditches, and even then it is but an ownership sub modo. Nevertheless, priority of appropriation is what the law jealously protects; it is of a species of property which has become immensely valuable as the western country has developed in its agricultural resources. By juridical law principles have been enunciated which protect the better right to the use of the waters of a creek by permitting a complainant who has such right to invoke protection of it against the acts of others, whether jointly or severally done. And the protection that is afforded should be as broad as the demand calls for, consonant always with those fundamental truths, which, under systems of administering justice, are recognized as the foundation of equitable jurisdiction. The quantity of water which a single one of these defendants may be diverting from Prickly Pear creek or its tributaries might not interfere at all with the Ames Company's use. But the result of the several diversions alleged against defendants might be shown to deprive complainant wholly of the enjoyment of any use. All users are therefore properly brought in to defend. By like reasoning, when they have come into court, these alleged diverters may ask relief against complainant, whose rights they say are subsequent to theirs.

But a still different condition may exist. One of the defendants may show that he is prior in right to complainant, and it may appear water is left in the creek sufficient to satisfy complainant's, as well as his own, right. As against him, complainant must fail. Another defendant may be proved to be subsequent in right to complainant, and is therefore defeated by complainant; but, though defeated by complainant in so far as his right is fixed in point of time, still, as the quantity of water which he claims a right to use is very limited, he might also enjoy his right without interfering with complainant in any injurious way, provided he can try and maintain his rights as against a codefendant, who has been defeated by complainant, but whose rights are subsequent to his (cross-complainant's), and who diverts so much water that he, the first cross-complainant, cannot use that to which he is justly entitled, though, as between him and original complainant, he might enjoy his right were it not for the extent to which his codefend-

ant is diverting. We may test this in this way: let us say that Prickly Pear creek carries 600 inches of water. The Ames Realty Company alleges it is entitled to 400 inches by appropriation taken out, let us say, one mile below the head of the stream; its appropriation dating January 1, 1864. An upper proprietor, who is a defendant, and whom we call B., claims a right to the use of 25 inches of water, which he says is his by appropriation dated January 1, 1865, or one year later than the complainant's. His ditch taps the crek half a mile above the point of diversion of the complainant. Another proprietor, whom we may call C., claims 200 inches, which were appropriated January 1, 1866. C. taps the creek above A. and above B. Subtracting 200 inches that C. takes out, there would still be enough water flowing to satisfy the original complainant claiming 400 inches. B., though, could get no water, notwithstanding his rights are superior to those of C., and notwithstanding the fact that he could enjoy his right without injury to the original complainant; enjoyment being denied because C. is diverting so much water that he (B.) is deprived of the use of that to which he is justly entitled, and which he would enjoy were it not for the extent to which his codefendant, C., is diverting the water. Will not a court of equity take jurisdiction with respect to this property right as ancillary to its jurisdiction over the case between complainant and first defendant, and, having jurisdiction of the whole proceeding, will it not proceed to do justice between all the parties? Reflection leads me to answer the questions in the affirmative. It is true that if complainant can secure protection of its own right, junior appropriators might be left to fight out their relative rights among themselves; but, as conditions frequently exist in litigation over usufruct of water, where it is practically impossible to make a just decree between complainant and one defendant without ascertaining rights of defendants as against one another, the court will permit cross-complaints to stand, to the end that a multiplicity of suits may be avoided, so that tedious, expensive, and unnecessary litigation may be saved.

In Union Mill & Mining Co. v. Dangberg (C. C.) 81 Fed. 73, complainant there brought suit in equity to obtain a decree against respondents for the alleged wrongful diversion of the waters of the Carson river in Nevada. He made about 125 persons respondents, alleging that they were farmers living above a certain mill, and that they used the waters of the Carson river for irrigation and other purposes. One of the contentions of the respondents was that, inasmuch as they did not claim the water of the river jointly, or by any common right, they could not be jointly sued, and that, therefore, complainant could not obtain the relief it sought. It was admitted that the respondents did not jointly or in common divert or use the water, and that they alleged that they claimed individual, distinct, and separate rights, independent of each other. Judge Hawley was of the opinion that the proofs and pleadings distinctly showed that the result of respondents' acts were such as to make their individual diversion of the water injurious to complainant's rights. He held that the claims of the respondents were of the same character, and were adverse to the complainant, and that they were, therefore, all properly united as respondents, because they

all diverted water from the Carson river, and claimed the right to divert it, as against the complainant. He said:

"These conflicting rights, whatever they may be, can be determined by one suit. Complainant might not be able to maintain its suit against them singly, for it may be that no one of the respondents acting individually has deprived complainant of all the water to which it is entitled. Complainant is only entitled, if at all, to a certain amount of the water of the river, and it is by the action of all the respondents that it has been deprived of the water to which it claims to be entitled. Each respondent claims the right to divert a given quantity of water. The aggregate thus claimed so reduces the volume of the water in the river as to deprive complainant of the amount to which it is entitled. To this extent, even if there is no such unity or concert of action or common design in the use of the water to injure complainant, there is certainly such a result in the use of the water by the respondents as authorizes complainant to maintain this suit, upon the ground that the action of all the respondents has produced and brought about the injury of which it complains. Every one who contributes to such injury is properly made a party respondent."

The analogy found between the reasoning of the case just quoted from and that at bar consists in the recognition of the rule that conflicting claims to the right to divert waters from a common source may be determined in one suit, and, although each respondent may claim a right to divert a given quantity of water, the aggregate thus claimed may so reduce the volume of the water in the stream as not only to deprive complainant of the amount to which it may be entitled, but may also so affect the volume of the water as to deprive one as against the other of the respondents of the amount to which he may be entitled. Pleadings, by way of cross-bills, setting forth such facts, would seem to touch the matters in question in the original bill in a way to authorize the court to proceed under the usual rules of pleading and practice in equity. Mitford's & Tyler's Pleading and Practice in Equity, page 178. But if, under the old chancery practice, no affirmative relief could be given to these defendants under their cross-bills, still the courts of the United States will not deny jurisdiction to proceed under the statute of the state already quoted, unless the equitable remedy afforded by the state statute impinges upon the rights of the litigants to a trial by jury at common law. No statute of the state can control modes of procedure in equity cases in the federal courts, nor deprive them of their separate jurisdiction in equity. Cummings v. National Bank, 101 U. S. 153, 25 L. Ed. 903. But the federal courts will enforce a new right or new remedy furnished by the laws of a state, as the nature of the new right or remedy requires. Reynolds v. First Nat. Bank, 112 U. S. 405, 5 Sup. Ct. 213, 28 L. Ed. 733.

One of the most interesting discussions sustaining the doctrine that, while alterations in the jurisdiction of state courts cannot affect the jurisdiction of the Circuit Courts of the United States so long as the equitable rights themselves remain, yet an enlargement of equitable rights may be administered by the federal courts as well as by the courts of the state, is to be found in the case of Holland v. Challen, 110 U. S. 15, 3 Sup. Ct. 495, 28 L. Ed. 52. That was a suit in equity to quiet title of plaintiff to certain real estate in Nebraska as against the claim of the defendant to an adverse estate in the premises. It was

instituted under a statute of the state of Nebraska permitting suit to be brought by any person, whether in actual possession or not, claiming title, to real estate against any person who claims an adverse estate or interest therein, for the purpose of determining such estate or interest and for quieting title to such real estate.    With the learning which characterizes all the opinions of that truly great jurist, Justice Field speaks of the growth of statutes permitting recovery of the possession of real estate, granting relief in equity where formerly no relief could have been had.    He proceeds to demonstrate that the statute of Nebraska is certainly for the interests of the state, and declares that it is for the interests of the community that conflicting claims to property situated as was the particular property in that case should be settled so that it might be subject to use and improvement.    "To meet cases of this character," he says, "statutes like the one of Nebraska have been passed by several states, and they accomplish a most useful purpose; and there is no good reason why the right to relief against an admitted obstruction to the cultivation, use, and improvement of lands thus situated in the states should not be enforced by the federal courts when the controversy to which it may give rise is between citizens of different states."    He reviews the earlier decisions of the Supreme Court, particularly Clark v. Smith, 13 Pet. 195, 10 L. Ed. 123; The Broderick Will Case, 21 Wall. 520, 22 L. Ed. 599; and quotes from Pomeroy's Equity Jurisprudence, § 1398.

The Legislature of the state of Montana has a right to say that in an action for the protection of water rights a plaintiff may make all persons who have diverted water from the same stream parties to such action, and that the courts of the state may in one judgment settle relative priorities and rights of all the parties to such action; and, having so provided, are not the federal courts by conforming to the state practice but applying their mode of proceeding to the enforcement of a remedy substantially consistent with the ordinary modes of proceeding in chancery?    Propriety and convenience are greatly promoted by pursuing the practice of the courts of the state, and if there be nothing in the character of the equities recognized by the state statute or the remedies prescribed which interfere with what legitimately pertains to the chancery practice, the federal courts will deal with controversies instituted under a state statute, so as to give effect to state legislation and state policy.    Clark v. Smith, 13 Pet. 195, 10 L. Ed. 123.    It is manifestly a good thing for the agricultural interests of the state that water rights be adjudicated.    The settlement upon, and cultivation of, lands in Montana depend largely upon the water rights available for irrigation purposes.    As the population of the state has increased, the values of water rights have become greater.    To avoid tedious and expensive litigation, involving the usufruct of the water of a stream whence many settlers may claim rights, the statute cited was passed, and I believe bench and bar will agree that its use has been fully demonstrated.    Under its procedure the courts have been enabled to hear and determine very many important water right suits, and to make final decrees fixing the rights of parties to the use of the waters of various streams in Montana.    System and quiet enjoyment are thus

had, and property rights are being settled to the satisfaction of those concerned. Now, why may not this right to bring all parties in and administer full relief be administered by the Circuit Courts of the United States as well as by the courts of the state?

In the case of Broderick's Will, 88 U. S. 503, 22 L. Ed. 599, Justice Bradley said:

"Whilst it is true that alterations in the jurisdiction of the state courts cannot affect the equitable jurisdiction of the Circuit Courts of the United States so long as the equitable rights themselves remain, yet an enlargement of equitable rights may be administered by the Circuit Courts, as well as by courts of the state. And this is probably a case in which an enlargement of equitable rights is effected, although presented in the form of a remedial proceeding. Indeed, much of equitable jurisidiction consists of better and more effective remedies for attaining the rights of parties."

In Greely v. Lowe, 155 U. S. 58, 75, 15 Sup. Ct. 24, 39 L. Ed. 69. Justice Brown wrote:

"This court has held in a multitude of cases that where the laws of a particular state gave a remedy in equity, as, for instance, a bill by a party in or out of possession to quiet title to lands, such remedy would be enforced in the federal courts if it did not infringe upon the constitutional rights of the parties to a trial by jury. Clark v. Smith, 13 Pet. 195, 10 L. Ed. 123; Holland v. Challen, 110 U. S. 15, 3 Sup. Ct. 495, 28 L. Ed. 52; Reynolds v. Crawfordsville Bank, 112 U. S. 405, 5 Sup. Ct. 213, 28 L. Ed. 733; Chapman v. Brewer, 114 U. S. 158, 171, 5 Sup. Ct. 799, 29 L. Ed. 83; Cummings v. National Bank, 101 U. S. 153, 157, 25 L. Ed. 903; United States v. Landram, 118 U. S. 81, 6 Sup. Ct. 954, 30 L. Ed. 58; More v. Steinbach, 127 U. S. 70, 8 Sup. Ct. 1067, 32 L. Ed. 51. This suggestion is the more important in view of a statute of Florida which authorizes a court of equity in partition cases 'to ascertain and adjudicate the rights and interests of the parties,' which has apparently been held to authorize the court, in its discretion, to settle the question of title as incidental to the main controversy, or retain the bill, and refer it to a court of law. Street v. Benner, 20 Fla. 700; Keil v. West, 21 Fla. 508."

In Grether v. Wright, 75 Fed. 742, 23 C. C. A. 498, after a careful review of the decisions of the Supreme Court, Judge Taft said:

"We think this review of the cases justifies the conclusion that the main purpose of section 723 Rev. St. [U. S. Comp. St. 1901, p. 583] was to emphasize the necessity for preserving to litigants in courts of the United States the right to trial by jury secured by the seventh amendment in suits at common law, and that, where a state statute grants to litigants in its courts an equitable remedy which does not impinge on their right to a trial by jury at common law, courts of the United States, sitting in the state as courts of equity, may grant the same statutory relief as that afforded in the state tribunals. In such cases, where the right of jury trial is not interfered with, the equitable remedy afforded by the statute of the state is usually so much more complete than the old remedies that the language of section 723 interposes no obstacle to equitable jurisdiction in the federal courts."

In Southern Pine Co. v. Hall, 105 Fed. 84, 44 C. C. A. 363, Judge Shelby, speaking for the Court of Appeals of the Fifth Circuit, said:

"An examination of the cases will show that the jurisdiction in equity in the United States courts to enforce statutes enlarging equitable remedies depends on the question whether or not the enforcement of the statue deprives a party of the constitutional right of trial by jury. Section 723 of the Revised Statutes of the United States, and the law as administered without regard to this statute, forbid equity to take jurisdiction where there is a plain and adequate remedy at law. If the record in this case showed that the de-

fendant was in actual possession of the lands, so that an action of eject-
ment could have been brought against her for the lands, then it would appear
that there was an adequate remedy at law, and jurisdiction in equity would
not exist in the United States courts, although the statute conferred such
jurisdiction on the Mississippi state courts. Whitehead v. Shattuck, 138
U. S. 146, 147, 11 Sup. Ct. 276, 34 L. Ed. 873. The result of the decision of
the Supreme Court is that a state statute which enlarges equitable rights will
be enforced and administered in the United States courts in all cases where its
enforcement and administration do not conflict with the right of the parties
to a jury trial. Clark v. Smith, 13 Pet. 195, 10 L. Ed. 123; In re Broderick's
Will, 21 Wall. 503, 22 L. Ed. 599; Hipp v. Babin, 19 How. 271, 15 L. Ed. 633;
Thompson v. Railroad Co., 6 Wall. 134, 18 L. Ed. 765; Insurance Co. v. Bailey,
13 Wall. 616, 20 L. Ed. 501; Grand Chute v. Winegar, 15 Wall. 373, 21 L.
Ed. 174; Buzard v. Houston, 119 U. S. 347, 7 Sup. Ct. 249, 30 L. Ed. 451.
See, also, Harding v. Guice, 25 C. C. A. 352, 80 Fed. 162; Green v. Turner
(C. C.) 98 Fed. 756. To review and quote from these cases would serve no
useful purpose. That work has already been done by Judge Taft, speaking for
the United States Circuit Court of Appeals for the Sixth Circuit, in Grether
v. Wright, 23 C. C. A. 498, 75 Fed. 742."

Reference was made by me during the argument to a recent ruling
I had made in the case of the United States against the Conrad Invest-
ment Company. The point there decided, however, has little relevancy
to the questions here involved. That was a bill in equity filed by the
United States against the Conrad Investment Company to restrain it
from maintaining a dam, which it had erected upon the lands of the
United States, and by means of which it was preventing the Indians
upon one of the reservations of the United States from enjoying the
use of waters, all of which were claimed by the United States as nec-
essary for the irrigation of lands within the reservation, and belong-
ing to the complainant. The defendant moved the court to order the
complainant to make certain persons, strangers to the original suit,
parties defendant. The defendant made no sufficient showing that
its rights would be affected by making such persons defendants, but
argued that they should be brought in, in order that there might be
a complete adjudication of the alleged rights, not only as between the
original parties, but between the United States and other persons who
were settlers claiming right of use of waters of the stream which had
been dammed by the defendant company. It was reasonably clear
that the persons defendant asked to have made parties were not nec-
essary or proper. The matter in litigation between the United States
and the Conrad Investment Company did not seem to be one which in
any way necessarily concerned persons other than the original parties;
hence, relying upon the doctrine of Union Mill Mining Co. v. Dang-
berg (C. C.) 81 Fed. 87, I held the complainant had a right to bring
only such parties before the court as interfered with its rights. The
principle of the case is that, where no relief is sought against persons
who are not connected in interest with the subject-matter of the suit,
they should not be made parties to the litigation. The rule, however,
that a complainant cannot be compelled to amend his bill and bring in
new parties, who are not indispensable or necessary or even proper
parties to the action, as disclosed by the bill of complaint, rests upon
reasons very different from those which underlie the practice which
allows parties, who are before the court by action of complainant, and

who are already within its jurisdiction, and who have an interest in the subject of the litigation, to assert rights, as against complainant and one another, provided the subject-matter concerning which affirmative relief is sought is directly connected with that involved in the principal action, and is germane thereto. In the one case complainant only asks relief against those whom he makes parties defendant, while in the other he is asking relief against those whom he has chosen to make parties, and they, in turn, when brought into court, ask affirmative relief against complainant and all parties to the suit who may be interfering with their alleged rights.

Van Bibber v. Hilton et al., 84 Cal. 585, 24 Pac. 308, was an action to restrain defendants from diverting the waters of a stream which flowed through the lands of both parties. Defendants by cross-complaints asked affirmative relief against plaintiff. The court stated the question in this language:

"Did the defendants in what are called the first and second cross-complaints seek affirmative relief thereby, affecting the property to which the action relates? The action relates to the waters of the stream, the right to the use of which the plaintiff claimed as a riparian proprietor, and the defendants in that capacity and as prior appropriators. * * * The right to the same water, the same property right, was involved in the action as brought as in the cross-complaints; and therefore a cross-complaint was the proper pleading, as we think, in which to set up the facts and claim the affirmative relief. There were then causes of action stated in the cross-complaints proper to such pleadings," etc.

Ayres v. Carver, 17 How. 591, 15 L. Ed. 179, is relied upon by defendants' counsel. But I do not regard the doctrine of that case as directly applicable to a case like that now before us. The court there treated the claims of certain codefendants cross-complainants, who were citizens of the same state, as forming no portion of the issue of the original suit. Justice Nelson said.

"As it respects the cross-bill, it may be proper to observe that the matters sought to be brought into the controversy between the complainants in that and their codefendants do not seem to have any connection with the matters in controversy with the complainant in the original bill. Nor is it perceived that he has any interest or concern in that controversy. These two complainants in the cross-bill set up a title to the lands in dispute, which, they insist, is paramount to that of their codefendants, and seek to obtain a decree to that effect, and to have the possession delivered to them. This is a litigation exclusively between these parties, and with which the complainant in the original bill should not be embarrassed or the record incumbered. The same matter has been set up in their answer to the original bill, against the equitable title claimed by the complainant, presenting the only issue in which he is interested, and upon which the questions between them can be heard and determined."

The case turned upon the point that there was perceived no interest by complainant in the controversy between defendants. By implication, if there had been any perceptible interest, the cross-bill would have been sustained. But, as I have shown, in controversies over the right to use the waters of a stream, where complainant makes a number of persons parties, as he has a right to do, it becomes a very decided concern of his, and of codefendants as betwen themselves and him, as to how the rights of cross-complainants may be settled, inasmuch as

the relief afforded them by definitely establishing their rights of user may so affect the use of the waters of the stream that complainant will have no enjoyment of any portion of it at all; his claim being subordinated, perhaps, to rights decreed to other parties. It would needlessly extend the length of this opinion to cite further authorities upon the general doctrine enunciated by those to which I have referred. They are enough to demonstrate as a principle that this court, having jurisdiction of the suit by reason of diversity of citizenship, may administer the substantial right conferred by the statute of the state, and accord the remedy which may be prescribed thereby.

The several defendants, who have answered only, urge that, the jurisdiction of this court being limited to controversies between citizens of different states, and the jurisdiction in this case being based upon the diversity of citizenship between complainant and defendants, the court will not retain the cross-bills, which seeks to obtain a decree determining the relative rights of the parties to the waters of the stream out of which complainant claims its rights, if diversity of citizenship is lacking between cross-complainants and other codefendants. The weight of authority is against the contention.

In First Nat. Bank of Salem v. Salem Capital Flour Mills Co., and others (C. C.) 31 Fed. 580, it was contended that a cross-bill could not be maintained on account of the citizenship of the parties thereto, because the cross-bill made a case between several parties, all of whom were British subjects. That was a suit in equity to enforce the lien of a mortgage. The action was brought by the First National Bank of Salem against the Salem Capital Flour Mills Company, Stuart, McDonald, and Kelly, to enforce the lien of a mortgage given to the bank by the flour mills company on certain property in Oregon. Plaintiff was a citizen of Oregon. The defendant company, Stuart, and McDonald were British subjects, and the defendant Kelly was a citizen of Rhode Island. Stuart held a mortgage on the same property, and there was included in Stuart's mortgage certain other property besides, not included in plaintiff's mortgage. The complaint alleged that the defendants McDonald and Kelly pretended to have an interest in the property by reason of certain judgments which had been obtained in the courts of the state of Oregon, and which were in litigation by suits which had been instituted in the state courts, but thereafter removed to the Circuit Court of the United States for the District of Oregon. The defendant Stuart filed a cross-bill against plaintiff and his codefendants in the original bill. He alleged that the City of Salem Company was an Oregon corporation, and had borrowed certain moneys from him, evidenced by promissory notes and mortgage, and that the mortgage covered the property included in the mortgage to the plaintiff, except a certain tract, which was intended to have been included therein, and which was mortgaged to the defendant by the Salem Capital Flour Mills Company, successor in interest of the City of Salem Company. In the cross-bill it further was alleged that the defendants Kelly and McDonald pretended to have an interest in the mortgaged property by reason of certain judgments in their favor, and that they (Kelly and McDonald) claimed that defendants' mortgages were void

for fraud. Kelly and McDonald demurred to the cross-bill because there was no jurisdiction of the persons and matters set forth. The objection was made that Stuart was not a necessary party to the suit, but only a proper one. Judge Deady said that it might be admitted that he was not a necessary party; yet plaintiff had a right to make him a party, and being properly made a party, he had the same right to file and maintain a cross-bill in the suit as he would if he were a necessary or indispensable party. Attempt was also made to show, that the cross-bill could not be maintained on account of the citizenship of the parties thereto, because a controversy was stated between Stuart on the one hand and McDonald and the flour mills company on the other, all of whom were British subjects. The learned judge disposed of this in the following language:

"Now, nothing is better settled, both on reason and authority, than this. In suits not original, but ancillary to litigation already pending in a Circuit Court of the United States, the citizenship of the parties is wholly immaterial. Shields v. Barrow, 17 How. 130, 15 L. Ed. 158; Freeman v. Howe, 24 How. 460, 16 L. Ed. 749; Cross v. De Valle, 1 Wall. 14, 17 L. Ed. 515; Railroad Co. v. Chamberlain, 6 Wall. 748, 18 L. Ed. 859. In the last case the court reversed the decree of the Circuit Court dismissing the cross-bill on the final hearing, because the parties thereto were citizens of the same state; saying that the cross-bill 'was but ancillary to, and dependent upon, the original suit,' and, by a necessary implication, that the citizenship of the parties in this connection was immaterial. If the citizenship of the parties in the original suit is sufficient to give the court jurisdiction, it has jurisdiction of the cross-bill therein without reference to the citizenship of the parties thereto. A cross-bill is a proper and recognized means of making a defense or asserting the right of a defendant in a suit in equity. It would be intolerable if a party sued in a national court was thereby deprived of this right, unless the parties to the cross-bill were such as to give the court jurisdiction in an original suit. In short, the cross-bill and the original suit are but one cause, and jurisdiction of the latter includes the former. Field v. Schieffelin, 7 Johns. Ch. (N. Y.) 252; Story, Eq. Pl. § 399."

It would appear as if a different rule had been followed by Judge Speer in Vannerson v. Leverett (C. C.) 31 Fed. 376, decided about the same time that Judge Deady expressed the opinion just quoted from. Vannerson v. Leverett was a controversy wherein a creditors' bill had been filed against the defendants, Vannerson and Leverett. Vannerson filed a cross-bill against his codefendant, Leverett, seeking relief in a certain indebtedness which existed between themselves. Leverett filed a plea to the jurisdiction of the United States courts, and averred that both he and Vannerson were citizens of Georgia. To this plea Vannerson demurred upon several grounds; one being that the bill filed by the creditors was a creditors' bill, and that the jurisdiction of the court did not depend upon the citizenship of the parties. The original bill in that case was dismissed, but Judge Speer did not regard that as material, but placed his decison upon the ground that, if Vannerson and Leverett were both citizens of Georgia, the one could have no relief in the United States court against the other, in a cross-bill filed to an original bill against them both, which he could not have obtained by original bill in the United States court. Emphasis was laid upon the fact that Vannerson had no standing in court as a suitor by original bill, and prayed no relief against the creditors. It was

held, too, that the cross-bill had no relation to the subject-matter of the suit by the creditors, nor was the cross-bill in any sense a reply to the allegations of the original bill.

There is no difficulty in reconciling the opinion of Judge Speer with that of Judge Deady, as it is clear that in the Salem Bank Case Stuart did have an interest in the subject of the controversy, and the cross-bill was ancillary to the original suit, while in the Vannerson Case the accounts which may have existed between the defendants themselves did not relate to the subject-matter of the suit by the creditors against the two defendants. Desty in his work on Federal Procedure, vol. 1, page 400, approves of Judge Deady's opinion, and deduces the following rule:

"An original bill and a cross-bill thereto constitute but one cause, and when a circuit court has jurisdiction of the former, by reason of the citizenship of the parties thereto, it has jurisdiction of the latter without reference to such citizenship." Jesup v. Illinois Cent. R. Co. (C. C.) 43 Fed. 483, 496; Foster's Federal Practice, § 18, p. 65; Park v. New York, L. E. & W. R. Co. et al. (C. C.) 70 Fed. 641.

In Brooks v. Laurent, 98 Fed. 647, 39 C. C. A. 201, the Court of Appeals for the Fifth Circuit passed upon the question directly involved. A cross-bill was there filed, praying for a decree enforcing the specific performance of the contract or lease, which was the subject-matter of the original bill. It was decided that the jurisdiction invoked by the cross-bill was not original, but ancillary; and, being merely ancillary to the original suit, the court said it might be maintained, "although the court would not have had jurisdiction of the cross-bill as an original action." The court cited Railroad Co. v. Chamberlain, 6 Wall. 648, 18 L. Ed. 859; Osborne & Co. v. Barge (C. C.) 30 Fed. 805; First Nat. Bank of Salem v. Salem Capital Flour Mills Co. (C. C.) 31 Fed. 580; Freeman v. Howe, 24 How. 450, 16 L. Ed. 749.

In Osborne & Co. v. Barge, supra, demurrers to the cross-bill in equity were filed. Judge Shiras considered the demurrers to the cross-bill upon the ground of lack of jurisdiction, and said:

"As already stated, the jurisdiction of the cause of action presented by the original bill and of the parties thereto cannot be and is not questioned. Having acquired full and complete jurisdiction of the original cause and the parties thereto, the court cannot be deprived thereof because another party obtains leave to intervene for the assertion of a right to the property which is the subject of the proceeding. If it be necessary for the protection of the rights of a third party that he be heard in the cause pending, he may be permitted to intervene, even though the court would not have, by reason of his being a citizen of the same state with complainant, jurisdiction over an original proceeding between the same parties. Freeman v. Howe, 24 How. 450, 16 L. Ed. 749; Krippendorf v. Hyde, 110 U. S. 276, 4 Sup. Ct. 27, 28 L. Ed. 145; Phelps v. Oaks, 117 U. S. 236, 6 Sup. Ct. 714, 29 L. Ed. 888.

In Lilienthal v. McCormick, 117 Fed. 89, 54 C. C. A. 475, the Bank of Woodburn, in Oregon, was made a defendant by the complainants, and brought into the suit in the United States court, where it asked affirmative relief, by filing a cross-bill for the foreclosure of certain liens, thus attempting to litigate the question whether the complainants had any lien against certain property. The Court of Appeals for this, the Ninth Circuit, held that the bank was properly before the

court, and that the federal court was the proper one to deal with the subject-matter of the litigation. Judge Hawley, speaking for the court, said:

"It had jurisdiction to determine the controversy between complainants and the Bank of Woodburn as to the priority of their respective liens upon the property. In this case, the Bank of Woodburn was made a party defendant in order that its rights might be heard and determined. If it had not been made a party, it would have had the right to intervene. The citizenship of the Bank of Woodburn and of Wong Gee, who was not a party to the original bill, did not deprive the court of its jurisdiction." Compton v. Jesup, 15 C. C. A. 397, 68 Fed. 263, 279, and authorities there cited; Schenck v. Peay, Fed. Cas. No. 12,450.

The rule is that consolidations, cross-bills, and interventions do not oust the jurisdiction of the court in the main suit, whatever the citizenship of the parties thus brought in may be. Sioux City Terminal R. & Warehouse Co. v. Trust Co. of North America, 27 C. C. A. 73, 82 Fed. 124, 128; Morgan's L. & T. R. & S. S. Co. v. Texas Cent. R. Co., 137 U. S. 171, 201, 11 Sup. Ct. 61, 34 L. Ed. 625; Park v. Railroad Co. (C. C.) 70 Fed. 641. The cases of Covert v. Waldron et al. (C. C.) 33 Fed. 311, and Cilley v. Patten (C. C.) 62 Fed. 498, are cited by defendants. Covert v. Waldron was not a case where cross-complaints were filed by persons interested in the subject-matter of the suit, who asked for affirmative relief. In Cilley v. Patten et al. the court decided that the parties complainant and defendants were selected for the purpose of creating a cause cognizable by the federal courts, and, as the court found no real controversy between citizens of different states, jurisdiction could not be had. The question considered does not bear upon the present case.

In conclusion, I hold that the cross-bills are proper, and that the elastic forms and modes of proceeding in equity will enable the court to do complete justice. even though the case be complicated and the parties numerous. There is no impingement upon the right to trial by jury. Jurisdiction in equity is complete as between complainant and defendants, and does not fail as between cross-complainants and complainant or others already parties to the suit, even though a diversity of citizenship may be lacking between codefendants.

The objections to the jurisdiction are denied.