## ADAMS v. SILVER SHIELD MIN. & MILL. CO. et al.

No. 4946. Decided May 10, 1933. (21 P. [2d] 886.)

Rehearing denied February 16, 1934.

*Morris & Callister,* of Salt Lake City, for appellants.
*Badger, Rich & Rich,* of Salt Lake City, for respondent.

HARRIS, District Judge.

Plaintiff brought this action against the Silver Shield Mining & Milling Company and Harry S. Joseph to recover the value of 12,500 shares of the capital stock of the defendant company as of December 14, 1928, alleged to be $7,500. It is alleged that on the last-named date plaintiff, as the owner of stock certificate No. A-3072 presented said stock certificate to the defendants with a request that the same be transferred from the name of her husband, W. C. Adams, to her, and that defendants wrongfully caused the said certificate to be transferred to H. S. Joseph and refused to return the same to her or to transfer it to her name.

Defendants answered admitting the presentation of the certificate by the plaintiff with request to transfer same to her, and that the same was transferred by the defendant company to H. S. Joseph, but alleged that H. S. Joseph was the owner thereof, and that plaintiff or her husband never were the owners thereof. A further defense was pleaded that H. S. Joseph delivered possession of the said certificate No. A-3072 for 12,500 shares of said stock to W. C. Adams with an option to purchase the said stock within one year for $3,125. That W. C. Adams failed to exercise the said option or to purchase the said stock within the one year or at all, or to pay the purchase price therefor or any part thereof, but, on the contrary, the said W. C. Adams indorsed and delivered the said certificate to the plaintiff (his wife) without any consideration, and that plaintiff took the certificate with full knowledge of the facts that W. C. Adams was not the owner thereof and had not paid for the same or any part thereof.

The case was tried to a jury who returned a verdict in favor of the plaintiff for the value of the stock. From a judgment on the verdict this appeal is prosecuted.

Briefly the record disclosed that on December 13, 1926, H. S. Joseph, who was president and manager of the defendant mining company, caused a certificate of stock belonging to him to be issued to W. C. Adams for 12,500 shares of stock and delivered the same to Mr. Adams who at the time signed the following instrument:

"Dec. 13, 1926.

"Mr. Walter C. Adams, Salt Lake City, Utah.

"Dear Sir: In consideration of the sum of $1.00 to me in hand paid, and for other good and valuable consideration. I hereby agree to sell to you at 25¢ per share within one year from date and am now delivering to you as evidence of good faith 12,500 shares of Silver Shield Mining and Milling Company stock, with the distinct understanding that the said 12,500 shares is not to be sold by you until such time as the option for one year which I hold on 500,000 shares of the Silver Shield Company shall have been exercised, and no transfer should be made until full payment of $3125.00 has been paid me, and it is further mutually agreed that the said 12,500 shares is to be disposed of at the market price of the said Silver Shield stock prevailing on the Salt Lake Mining & Stock Exchange after the exercise of the option above mentioned pro rata with my stock within one year from date, and as said stock is sold, you are to deliver at your option your pro rata when called upon, at the price it has been sold at with my stock, and accept proceeds of said sales which I agree shall be pro rata both as to price and quantity. At the end of one year if my stock is not sold, you are to redeliver the certificate to me.

"[Signed] H. S. Joseph.

"Accepted Walter C. Adams."

Adams never paid for the stock or offered to exercise the option, although apparently Joseph took up and sold the 500,000 shares and the stock was selling on the Salt Lake Mining Exchange for about 50 cents per share and went up as high as 90 cents per share during the year.

Joseph testified that after the year was up and the option not taken up he made repeated efforts to get back the stock certificate but without success. In 1928 plaintiff brought an action against her husband, W. C. Adams, for a divorce, and on July 18, 1928, she was granted a decree of divorce in which she was awarded the minor children and $75 per month alimony. The decree did not mention a property

settlement or the personal property belonging to the parties. It appears, however, the parties had a property settlement in which the husband delivered to plaintiff all of his property, consisting of a newspaper plant at Bingham, certain mining stock, including the certificate in question, and $1,000 out of $1,500 on deposit in the Bingham Bank, the husband retaining $500 of the money on deposit in the bank. The stock certificate in question was indorsed in blank and delivered to plaintiff by her husband on July 23, 1928. The plaintiff testified her husband gave it to her to be used in educating the children.

There is no dispute that the original stock belonged to H. S. Joseph, and that plaintiff paid her husband nothing for it. Likewise, there is no evidence that W. C. Adams ever paid Joseph any part of the purchase price of the stock. There was a sharp dispute in the evidence as to whether plaintiff knew of the existence of the written option agreement, and that her husband had paid no part of the purchase price of the said stock. We may here assume that the finding of the jury as to the disputed evidence is final.

At the close of the evidence the defendant moved for a directed verdict on the ground that the undisputed evidence disclosed that Mr. Joseph was the owner of the stock, and that plaintiff was not a holder of the stock for value and in good faith. The refusal of the court to grant the motion is assigned as error, and the question of whether or not the plaintiff is a purchaser for value in good faith presents the only serious question on this appeal.

Plaintiff cites and relies upon Comp. Laws Utah 1917, § 878, and the Uniform Stock Transfer Act (Laws of Utah 1927, chap. 55). Comp. Laws 1917, § 878, reads as follows:

"Stock shall be deemed personal property, and the delivery of a stock certificate of a corporation, together with a written transfer of the same, signed by the owner, to a bona fide purchaser or pledgee for value, shall be deemed a sufficient transfer of the title as against any creditor of the transferer and all other persons whomsoever. * * *"

Section 6 of the Uniform Stock Transfer Act (Laws of Utah 1927, chap. 55) provides:

"The indorsement of a certificate by the person appearing by the certificate to be the owner of the shares represented thereby is effectual, except as provided in Section 7, though the indorser or transferor, * * *

"(d) has received no consideration."

Section 7 of that act provides:

"If the indorsement or delivery of a certificate * * * or if the delivery of a certificate was made, (c) without authority from the owner * * * unless: (1) The certificate has been transferred to a purchaser for value in good faith without notice of any facts making the transfer wrong. * * *

"Any court of appropriate jurisdiction may enforce specifically such right to reclaim the possession of the certificate or to rescind the transfer thereof and, pending litigation, may enjoin the further transfer of the certificate or impound it."

Just what the legal difference, if any there is, in the meaning of these acts, or whether the Uniform Stock Transfer Act repeals the old section 878, it is not necessary for us here to determine. The undisputed evidence in this case disclosed that the plaintiff took this certificate without paying any value therefor so that she is not a bona fide purchaser for value unless the fact that she took it as a part of a property settlement made contemporaneously with her securing a divorce from her husband makes her a purchaser for value.

It has almost universally been held by the courts that, while a certificate of stock is not a negotiable instrument, an owner of such stock who intrusts another with his stock certificate indorsed or signed in blank clothes the party to whom the certificate is intrusted with such indicia of ownership that an unauthorized sale or pledge of the certificate by the latter to an innocent purchaser or pledgee for value is binding upon the true owner and prevents him from asserting a paramount interest in the shares. See long list of cases in the note in 73

A. L. R. 1407. Most of the cases say that the rights of the bona fide holder as against the true owner do not depend on the proposition that the stock certificates are negotiable paper, but rest in estoppel upon the theory that one who has conferred upon another, by indorsement and delivery of the stock certificate, all indicia of ownership of the property is estopped to assert title to it as against a third person who has purchased it for value, in good faith, from the apparent owner. It is sometimes said that, where one of two innocent people must suffer, the true owner or the innocent purchaser, the owner, by delivering the certificate indorsed in blank, has enabled the third party to perpetrate the wrong and therefore should be estopped from asserting his ownership.

In *Brown* v. *Wright*, 48 Utah 633, 161 P. 448, 450, this court says:

"The authorities hold that stock certificates are a peculiar kind of property, and while, strictly speaking, not negotiable as commercial paper, yet are treated and dealt with similarly to such paper. [Citing cases.] * * * Under the facts as found the appellant is estopped from disputing the ownership of the certificate in Thomas Wright, Jr."

We have discovered no reason why the Uniform Stock Transfer Act changes these rules, and no case has been found or called to our attention which suggest the act changes the same. Respondent argues that section 6 of the act makes the plaintiff the absolute owner of the stock, and that it was incumbent on the defendant under section 7 to commence an action for repossession of the stock before it was transferred to plaintiff even if without consideration. This would make the rights of the parties depend entirely upon whether or not an action to recover the stock has been commenced at the time of the transfer and not on the equitable doctrine of estoppel. In other words, if the rights of the parties were solely to be determined on whether or not a suit has been commenced under section 7 of the act prior to the transfer, then it would not make any difference

whether the transferer was a purchaser for value or took with full notice of facts that the transfer was wrongful and the transfer would be final. We do not believe the Uniform Stock Transfer Act was intended to make any such change in the law.

Returning to the question whether or not the plaintiff here is a purchaser for value. This court in the case of *Gustin* v. *Mathews,* 25 Utah 168, 70 P. 402, held that a conveyance by a husband to his wife of all of his property without consideration was fraudulent and void as to creditors, even though the wife does not participate in the fraud and no actual fraud on the part of the husband need be shown. This rule of law is generally adopted by the courts. See note, 17 A. L. R. 728.

In *Mayberry* v. *Whittier,* 144 Cal. 322, 78 P. 16, 17, the court says:

"It is clearly the general rule that, upon a division of community property under a divorce decree, the former husband and wife each take the part awarded subject to prior liens; and it has been held that the part awarded either wife or husband is subject to community debts not reduced to liens."

The plaintiff testified her husband gave her all of his property except the $500. "He offered to give me everything he had and I agreed to give him $500.00 in cash that we had in the bank at Bingham, rather than not to have him have anything." It would thus appear that the $500 retained by the husband out of the $1,500 in the bank was out of consideration for his welfare and not because he was delivering to his wife this stock that did not belong to him. It is contended that by taking this stock and accepting this alimony the wife gave up the right to claim more alimony and also gave up the $500 which was a proper consideration to make her a purchaser. The trouble with this contention is that it assumes that, if the division of the personal property had been settled in the divorce action, plaintiff would have been entitled to more

than she received, and we see nothing in the record which should warrant such an assumption. We are impressed under the record that this transfer was a mere voluntary gift without consideration and void as to creditors. We are unable to discover any equities in the case that should estop the defendant from claiming his stock. We are convinced that under the peculiar circumstances of this case plaintiff was not a purchaser for value, and that upon the record the court should have directed the verdict for the defendant.

The judgment is reversed, and the case is remanded to the district court of Salt Lake county, with directions to grant a new trial. Appellant to recover costs.

STRAUP, C. J., and ELIAS HANSEN, and EPHRAIM HANSON, JJ., concur.

MOFFAT, J., being disqualified, did not participate herein.

FOLLAND, J. (concurring).

I concur. It is probably unnecessary, for the purpose of this case, to make a more definite statement than is made in the opinion with respect to negotiability of stock certificates. I call attention, however, to the fact that one of the purposes of the Uniform Stock Transfer Act (Laws 1927, c. 55) was to give full negotiability to certificates of stock, as indicated by the Commissioner's note to section 5 of the Act, 6 Uniform Laws Annotated, p. 10, as follows:

"This section gives full negotiability to certificates of stock. In so doing it goes beyond the existing law but is in accordance with mercantile custom. In many cases a similar result has been reached on the theory of estoppel if the real owner's negligence contributed to the theft or unauthorized dealing with an indorsed certificate."

Cases construing the act give effect to this purpose. *Peckinpaugh* v. *H. W. Noble & Co.,* 238 Mich. 464, 213 N. W. 859, 52 A. L. R. 941; *U. S. Gypsum Co.* v. *Houston,* 239 Mich. 249, 214 N. W. 197; *Edmund Wright-Ginsberg Co.* v. *Carlisle Ribbon Mills,* 105 N. J. Eq. 411, 148 A. 178.