RALPH A. BADGER & CO. v. FIDELITY BUILDING & LOAN ASS'N.

No. 5937. Decided February 1, 1938. (75 P. 2d 669.)

100

*Irwin Clawson,* of Salt Lake City, for appellant.

*Stephens, Brayton & Lowe* and *Calvin Behle,* all of Salt Lake City, for respondent.

HANSON, Justice.

On June 24, 1925, the defendant, a building and loan association organized under the laws of Utah, issued to Arthur and Celina Le Clerc of Tonapah, Nev., a certificate for 50 shares of its capital stock, known as "Investors' Guarantee Dividend Stock." Under the terms of the certificate, the defendant promised to pay, upon the maturity of the certificate, the sum of $5,000 as provided by section 2, article 10, of the by-laws of the association. The Le Clercs

matured said certificate in May, 1932, and on December 27, 1932, filed notice of withdrawal with the defendant for the entire matured value. Defendant paid nothing on the certificate. On January 2, 1934, the Le Clercs transferred, by assignment, their interest in the certificate and plaintiff became the owner of a half interest therein. The certificate was surrendered to defendant and two new certificates representing the same class of stock were issued, each for 25 shares and each containing a promise to pay the sum of $2,500. One of these certificates was issued in the name of Ralph A. Badger, but it is conclusively shown that the plaintiff was the owner thereof and had it issued in that name as a matter of business convenience. It was understood by both plaintiff and defendant that the notice of withdrawal originally filed by the Le Clercs would stand for plaintiff's certificate so that it would be paid in the order fixed by the original notice of withdrawal.

Plaintiff, on two or three occasions, made inquiries of defendant concerning the payment of its certificate, the last such inquiry being made August 24, 1934, when it was informed by defendant that payments were not being made on withdrawals and payment of the certificate was refused. Thereafter, plaintiff sent the certificate to the Atlas Realty Company at Ogden, Utah, and received the sum of $1,250 for it. Later plaintiff learned that the Atlas Realty Company had acted as the agent for the defendant in procuring said certificate; that the money paid therefor had been furnished by defendant; that said certificate had been surrendered to defendant and had been canceled. Plaintiff then brought suit to recover the difference between the face amount of the certificate and the amount it had received from the Atlas Realty Company for the certificate.

Plaintiff's complaint contains three causes of action. Nothing is claimed for the second cause of action. In the first and third causes of action, plaintiff alleges ownership of said certificate on August 24, 1934; that the certificate was then matured and demand for payment was made on

that date, but defendant refused to purchase it, and informed plaintiff that it was not yet obligated to purchase, as there was approximately $50,000 in book value of stock listed for purchase ahead of plaintiff's certificate; that, after defendant's refusal to purchase the certificate plaintiff sold it to the Atlas Realty Company for $1,250; that the latter company was the principal buyer of outstanding stock of defendant, and was engaged in purchasing it on behalf of defendant for defendant's benefit; that defendant supplied various parties with the names of its stockholders to enable them to acquire stock at a small fraction of its real value and defendant supplied a market for such parties to resell the stock so obtained to the profit of defendant; that in so doing it was the purpose of defendant to obtain said investment stock for a fraction of the amount owing thereon by defendant to its stockholders and to defraud them of the amount to which they were entitled, to the profit of defendant and holders of its permanent reserve fund stock; that defendant supplied the money to make such purchases and refused to apply on withdrawals funds which should have been so applied, thereby creating the impression that there was no likelihood of payment by defendant as contracted for a period of years so as to "freeze out" its investors and compel them to sell at a discount; that between December 27, 1932, and August 24, 1934, defendant, in violation of its duty under its contract, decreased the amount which it should have applied on the purchase of investment stock, and from August 1, 1934, ceased altogether to purchase any stock on withdrawal or maturity as contracted, and falsely informed plaintiff and other investors that it was not legally required to pay anything further on maturity or withdrawal; that defendant had full knowledge of the facts of its liability to purchase plaintiff's stock and plaintiff had to, and did, rely on defendant's statement that it was not legally required to make further purchases, and plaintiff thereupon sold said certificate for $1,250, to its damage in the sum of $1,250.00 together with interest.

In the first cause of action, it is alleged that, had the defendant applied one-half of the monthly receipts from December 27, 1932, to August 24, 1934, to the payment of stock listed on December 27, 1932, for withdrawal and maturity, in the order that the same was listed, defendant would have paid the plaintiff at or prior to August 24, 1934, the sum of $2,500 for said certificate.

In the third cause of action, it is alleged that, if defendant had applied one-half of its monthly receipts from December 27, 1932, to June 26, 1933, to the payment or purchase of stock listed for withdrawal and maturity, and thereafter applied one-half of the net receipts as defined in chapter 7, Laws of Utah 1933, to the purchase of certificates listed on December 27, 1932, for purchase, defendant would have purchased plaintiff's certificate on or before August 24, 1934.

By its answer, defendant admitted the certificate matured May 1, 1932; that Ralph A. Badger requested payment of the value of the stock on August 24, 1934, and defendant refused to make such payment; that said certificate would have been paid prior to August 24, 1934, had defendant applied to withdrawals one-half of its receipts from December 27, 1932, to August 24, 1934; that the certificate was sold to the Atlas Realty Company which purchased stock in handling real estate to the benefit of all stockholders. All else in the complaint was denied. Defendant alleged certain affirmative defenses which need not be here stated, as they do not bear upon the issues before us.

After the case had been tried and while it was held under advisement by the trial court, defendant was permitted to file an amendment to its answer in which it alleged that on August 20, 1934, there was a dispute between plaintiff and defendant as to when the certificate was due and payable, plaintiff asserting it was then due and payable and defendant asserting in good faith that it was not then due and payable; that on August 24, 1934, defendant paid plaintiff the sum of $1,250, which was paid and accepted in full settlement, satis-

faction, and discharge of all plaintiff's rights under said certificate; that the certificate was delivered indorsed in blank and defendant accepted and canceled it.

Upon the filing of this amendment to defendant's answer, the court made findings of fact and entered its judgment in favor of defendant, no cause of action. The following findings of fact are not questioned by plaintiff or defendant: That a certificate for 50 shares was issued to the Le Clercs on June 24, 1925; that this certificate matured in May, 1932, and a notice of withdrawal was filed with defendant December 27, 1932; that the certificate was sold to plaintiff January 2, 1934, and was surrendered to defendant, who issued to plaintiff 2 certificates in the amount of $2,500 each in lieu thereof; that on August 1, 1934, defendant adopted a policy under which it ceased to pay on withdrawals of stock, matured or unmatured, and used all income for other purposes; that plaintiff's certificate for $1,250 was presented for payment on August 24, 1934, but defendant refused to pay the same and informed plaintiff that it was not due and payable, that there were certificates aggregating $50,000 ahead of plaintiff's, and that it was problematical when plaintiff's certificate would be paid; that the financial condition of defendant was then discussed and all information requested by plaintiff was furnished; that said certificate was then in fact due and payable and only $20,000 in withdrawals were ahead of plaintiff's certificate; that plaintiff relied on the information given by defendant, and on August 24, 1934, sold the certificate to the Atlas Realty Company for $1,250, the established market value being then 43 per cent of the withdrawal value; that the Atlas Realty Company acted as agent, and, under instructions from defendant, paid for said certificate with funds furnished by the defendant, but paid in the name of Atlas Realty Company; that said company delivered this certificate, and others purchased in a similar fashion, to defendant; that the funds so used were obtained by defendant by selling certain real estate; that the transactions were so carried on defendant's books

that the gain from the purchase of said certificates offset the book loss on the sale of the real estate; that plaintiff did not know at the time of the transaction that the Atlas Realty Company was acting as agent for defendant; that one-half of the gross receipts of defendant, excluding money borrowed, for each month from December 27, 1932 to July 1, 1933, exceeded in amount all other certificates filed for withdrawal prior to December 27, 1932; that one-half of the monthly receipts of defendant from December 27, 1932, to June 26, 1933, and thereafter to August 24, 1934, one-half of the net receipts of the defendant as defined in chapter 7, Laws of Utah 1933, exceeded in amount the withdrawal value of the certificate sued on and all other certificates filed for withdrawal prior to December 27, 1932; that the monthly receipts from stock subscriptions between December 27, 1932, and August 20, 1934, did not exceed the withdrawal value of plaintiff's certificate and all the other certificates filed for withdrawal prior to December 27, 1932; that plaintiff's certificate provided that defendant should not be required, without the consent of the board of directors, to use more than one-half the money received from monthly payments on any class of stock in any month to the payment of withdrawals; that defendant paid plaintiff, and plaintiff accepted, the sum of $1,250 in full settlement, satisfaction, and discharge of all rights of plaintiff to and under the certificate, and the plaintiff delivered the certificate to, and it was accepted and canceled by, defendant.

Plaintiff takes exception in its assignments of error to the following findings of the court:

"13. That there was no intent to defraud on the part of the defendant in making the purchase of the certificate sued on through the Atlas Realty Company but the purchase was made in good faith in the belief that the action taken was for the best interest of the defendant and its stockholders, nor was the policy adopted to discourage plaintiff and other withdrawing stockholders, nor was it done to create an impression that there was no likelihood of payment by defendant's association, nor to freeze out such investors, nor to discount to the profit of the defendant; that the defendant did not supply other

parties with the names of its stockholders for the purpose of enabling such persons to obtain title to the stock of such investors by purchase or trade at a small fraction of their real value."

"14. That the statements made by defendant which were in fact untrue were not made for the purpose of misleading the plaintiff or inducing it to rely upon such misstatements to its damage; that the books and records by which it could be determined that the statements were untrue, were available to plaintiff."

"15. That at the time that the demand for purchase was made by the plaintiff, a dispute existed between the plaintiff and defendant as to when the certificate was due and payable and the plaintiff in good faith asserted and believed that the certificate was then due and payable and the defendant in good faith asserted and believed that the certificate was not due and payable."

The court made the following conclusions of law : (1) That the action of the defendant in purchasing the stock did not constitute a fraud on plaintiff; (2) that plaintiff was not entitled to rely upon the representation of defendant to the effect that its certificate was not due and payable and that $50,000 of unpaid certificates remained ahead of plaintiff's certificate; (3) that plaintiff, by the surrender and delivery of the certificate to the Atlas Realty Company, accepted the consideration paid in full satisfaction and discharge of any claim made on the certificate; (4) that plaintiff has no cause of action against defendant. Plaintiff asserts error in making each of the foregoing conclusions of law.

Plaintiff has excepted to the action of the trial court in permitting defendant to file the amendment to its answer above referred to. Because of the view we take as to the questions raised by the amendment and to the trial court's findings and judgment based thereon, assuming it was proper for the court to permit the filing of the amendment, we need not discuss the merits of plaintiff's exception.

It will be observed that both in the pleadings and in the findings of fact and conclusions of law the parties and the court have used the words "sold" and "purchase" in connection with the transfer and delivery of said certificate by

plaintiff, and have also referred to such transaction and the payment made thereunder as a settlement, satisfaction, and discharge of plaintiff's rights to and under said certificate. It is obvious the transaction could not be both a sale of the certificate and an accord and satisfaction, as a different kind of contract is created in each instance, the former being a transfer of the certificate for a price, while the latter is the giving of the money paid over in payment or extinguishment of the plaintiff's claims under the certificate. 1 C. J. S., Accord and Satisfaction, p. 466, § 1 (8). This apparent inconsistency may be eliminated by looking to the substance of the transaction here involved rather than to the form which otherwise would be created by the use of the words which give rise to the inconsistency. *Reynolds* v. *Crawfordsville First Nat. Bank,* 112 U. S. 405, 58 S. Ct. 213, 28 L. Ed. 733.

There is some confusion in the authorities as to whether the holder of matured stock in a building and loan association after demand for payment has been made upon the association ceases to be a stockholder and becomes merely a creditor of the association. See 98 A. L. R. 89, note. It is not necessary to a decision of this case to define precisely the relation which existed between plaintiff as such a stockholder and the association, for it is clear that the certificate here involved constituted, at the time plaintiff presented it for payment on August 24, 1934, an outstanding obligation of the defendant, and, as between plaintiff and the defendant, the former was entitled to enforce the payment thereof and to that extent would be regarded as a creditor. *Rogers* v. *Ogden Building & Sav. Ass'n,* 30 Utah 188, 83 P. 754. By the terms of said certificate the defendant was obligated to pay plaintiff the sum of $2,500. Notice of withdrawal of the entire amount had been given. The undisputed facts show, and the court found, that the last request for payment was made at a time (August 24, 1934) when the face amount of the certificate was actually due and payable according to law and the by-laws

of the defendant. It was not then paid because the defendant asserted it was not due and that it had adopted a policy of not paying withdrawals, regardless of its obligations under its outstanding certificates to pay the same. We attach no importance to the provision in the certificate which provided that the association could not be required to pay on the certificate more than one-half of the money received from monthly payments on any class of stock in any one month without the consent of the board of directors, for it is manifest from the evidence that the defendant did not consider such provision as in any manner restricting plaintiff to the income from payments received monthly or preventing plaintiff from receiving the face amount of the certificate, even assuming, without deciding, that such a provision would be controlling in the face of our statute which required one-half of the receipts in any one month of a building and loan association to be applied to withdrawals. Section 7-5-11, R. S. Utah 1933.

In order to dispose of the issues before us on this appeal, it is necessary to analyze the transaction which took place and the evidence which was before the trial court. There is no dispute but that defendant obtained the certificate in question in the following manner: After, but on the same day that, plaintiff had been advised by defendant that the latter would not pay the certificate, that it was not yet due, that approximately $50,000 in withdrawals would have to be paid before plaintiff's certificate could be paid, and that it was not paying withdrawals, a representative from the Atlas Realty Company called at plaintiff's place of business and requested plaintiff to send to said company certain stock certificates enumerated on a list which said representative furnished. He then inquired about the certificate held by plaintiff and said, "If you will put this certificate in with mine and send this to Ogden, I will get you fifty cents on the dollar for your certificate." The proposition was accepted and the certificate was sent

to the Atlas Realty Company, whose office was located in Ogden, Utah.

On the back of the certificate is a printed form of assignment to be used in transferring the certificate. Below the assignment and separated therefrom by two lines running across the paper is a printed receipt form which reads: "Received —— dollars $—— of the Fidelity Building and Loan Association, the full amount due on the within certificate and it is hereby surrendered and ordered cancelled." The assignment form was not executed. Ralph A. Badger signed his name to the receipt form. The amount of money receipted for was left blank. It seems to us that some significance must be attached to this kind of an endorsement, as it indicates, not an ordinary transfer of the certificate, but an acknowledgment of a receipt of money payable thereunder. No explanation is offered as to why the receipt form only was signed, although Mr. Badger had been a stockbroker for years and certainly must have known the proper manner of transferring a certificate of stock. It is difficult to perceive how the transferee would be able to get a transfer made to himself by the association on the books of the company with that kind of an endorsement. The certificate which plaintiff acquired from the Le Clercs is in evidence and shows that both the assignment and the receipt forms were signed. The evidence shows the agent of the Atlas Realty Company promised to get 50 cents on the dollar, and plaintiff sent in its certificate for the purpose of getting that amount, and it simply signed the receipt form, which by its language indicated that the certificate was being surrendered, not for transfer, but solely for cancellation. It would seem, therefore, that an ordinary sale and surrender of the certificate for transfer on the books of the defendant was not contemplated by either party.

While plaintiff did not know it, the Atlas Realty Company, as a matter of fact, was acting as agent for the defendant, and the defendant furnished the money which was paid for the certificate, said company receiving a one or

two per cent commission for its services. The certificate was delivered to defendant by said company, endorsed only on the receipt form as above stated, and was canceled on defendant's books. The same result was thus obtained through the use of a directed and controlled, but concealed, agency as would have been accomplished had defendant obtained the certificate directly from plaintiff upon a payment to plaintiff of half its face and accrued value. "As the sum paid was really the money of the debtor, and paid over by his agent, it is the same as if paid by himself." *Shaw* v. *Clark,* 6 Vt. 507, 27 Am. Dec. 578. The transaction netted defendant a profit which it offset on its books against a book loss occasioned by the sale of certain real property, the proceeds from which sale supplied the money used to obtain plaintiff's certificate. So far as the defendant was concerned, the debt evidenced by the certificate was deemed paid and extinguished and the receipt signed by Badger acknowledged payment in full. Such a transaction and result is inconsistent with both a sale of the certificate to defendant and a purchase by defendant of the debt owing thereon, as distinguished from payment of or on the debt. Neither the certificate nor the debt evidenced by it was intended to be kept alive. "The essential difference between purchasing a debt and paying it consists not in what is done or in the manner of doing it, but in the intention with which the consideration is paid and accepted, whether to extinguish the debt or to keep it alive." 48 C. J. 588.

The trial court apparently arrived at the conclusion that the transaction, as a matter of substance, was a payment by defendant to plaintiff of a part of the amount due and held that such payment constituted an accord and satisfaction, and for that reason plaintiff was not entitled to recover as the court found there was no fraud. We agree with the trial court that the transaction as disclosed by the evidence was in legal effect a payment by defendant to plaintiff of the sum of $1,250 to liquidate and settle the amount owing on the certificate, for which

amount plaintiff gave a receipt acknowledging payment in full. The principal question before us on this appeal, therefore, is whether the evidence discloses an accord and satisfaction. It is stated in 1 Am. Jur. p. 217, § 4, that: "The discharge of claims by way of accord and satisfaction is dependent upon a contract express or implied; and it follows that the essentials necessary to valid contracts generally must be present in a contract of accord and satisfaction. Therefore, the following elements are essential: (1) A proper subject matter, (2) competent parties, (3) an assent or meeting of the minds of the parties, and (4) a consideration."

To the same effect see 1 C. J. S., Accord and Satisfaction, p. 469, § 3(a). This court in a number of cases has followed the rule thus enunciated: *Smoot* v. *Checketts,* 41 Utah 211, 125 P. 412, Ann. Cas. 1915C, 1113; *Rohwer* v. *Burrell,* 42 Utah 510, 134 P. 573; *Gray* v. *Bullen,* 50 Utah 270, 167 P. 683; *Ashton* v. *Skeen,* 85 Utah 489, 39 P. 2d 1073; *Sullivan* v. *Beneficial Life Ins. Co.,* 91 Utah 405, 64 P. 2d 351; *Browning* v. *Equitable Life Assur. Soc. of U. S.,* (Utah), 72 P. 2d 1060, 1068. In the case last cited we said:

"An accord is an agreement between parties, one to give or perform, the other to receive or accept, such agreed payment or performance in satisfaction of a claim. The 'satisfaction' is the consummation of such agreement. There must be consideration for the agreement. Settlement of an unliquidated or disputed claim where the parties are apart in good faith presents such consideration. Where the claim is definite and no dispute but an admittance of its owing, the agreement to take a lesser amount even followed by satisfaction is not good unless attended by some consideration."

In the case before us the claim was definite in its amount and it was admitted that defendant owed plaintiff that amount. There was no dispute over either of these elements. The trial court found, however, that there was a dispute, in good faith, as to whether the certificate was due and payable. The only consideration for the agreement of accord and satisfaction found by the court

consists in the defendant paying the sum paid while contending that the claim was not yet due and payable. Whether a difference between parties as to the debt being presently due and payable, where the debt and the amount thereof are admitted, constitutes such a dispute as to furnish a consideration sufficient to support a part payment as a discharge of the debt, we need not decide, for we fail to find any evidence whatsoever indicating that a dispute or difference of any kind existed between plaintiff and defendant as to the time when plaintiff's certificate was or would be due and payable. The evidence simply discloses that plaintiff, being desirous of obtaining its money owing under the certificate, went to defendant's place of business and asked for the money. It was informed that the certificate was not then due and payable, first, because there was $50,000 in withdrawals ahead of it, and, second, that the defendant had decided to pay off certain creditor obligations before disbursing funds on stock withdrawals. Plaintiff was shown the books and records to confirm these statements. There is not the slightest evidence that plaintiff disputed any of these statements made to it by the defendant. On the contrary, the evidence fairly discloses that plaintiff's representative went away from defendant's office resigned to the situation that it was problematical when the certificate would be due and payable for when defendant's agent called thereafter and inquired about plaintiff's stock, the plaintiff's manager concluded that it would be better to take the 50 per cent offered, being 7 per cent above the market price, than to continue to hold the certificate. Plaintiff never at any time, until suit was brought so far as the record discloses, asserted the certificate was due and payable, except such assertion as may be inferred from having asked for payment. But the debt, because of its nature, would be due and payable at a time which could only be determined by knowing how much money had been received monthly by the defendant since plaintiff's withdrawal notice had been filed and how much in withdrawals had been filed and still

remained, at the time payment was requested, ahead of plaintiff's notice. No one but the defendant would or could have any knowledge of such facts.

Plaintiff's agent was shown a list of the withdrawals which were ahead in time of plaintiff's withdrawal. A somewhat casual inspection of that list seemed to satisfy plaintiff that there were about $50,000 in withdrawals which would be payable before plaintiff could require payment. Plaintiff was in no position to dispute the representations of the defendant as to matters solely within the latter's knowledge. There is no evidence that it did dispute them. On the contrary, the evidence shows, and the court found, that plaintiff relied upon the information given it by defendant and that it made no inspection of defendant's books and did nothing else to inform itself of the facts. Until it received information other than that furnished by defendant, it had no basis upon which to predicate a dispute. It would appear affirmatively, therefore, that no dispute did or could exist. *Whepley Oil Co.* v. *Associated Oil Co.*, 6 Cal. App. 2d 94, 44 P. 2d 670. And, so long as it relied upon the information given it by defendant as being true, when in fact it was not true, and the court so found, there could be no element of dispute and the purported settlement would not bind plaintiff. *Chicago Fraternal Life Ins. Ass'n* v. *Herring*, Tex. Civ. App., 104 S. W. 2d 901, 903; *Horn* v. *Atlas Assur. Soc.*, 241 Ky. 226, 43 S. W. 2d 675, cited in *Yutz* v. *Commonwealth Life Ins. Co.*, 264 Ky. 142, 94 S. W. 2d 326.

Under the law as it existed prior to June 26, 1933, the defendant was not required to pay out each month on withdrawals more than one-half its monthly receipts without the consent of its board of directors. Laws of Utah 1925, c. 43, § 4; Laws of Utah 1929, c. 95, § 4; section 7-5-11, R. S. 1933. In 1933 the law was changed so that "not more than one-half of the net receipts in any one month shall be applied to withdrawals for such month without the consent of the board of directors." Laws of Utah

1933, c. 7, § 7-5-11. This section became effective June 26, 1933. After this latest enactment it would require an audit of defendant's business to determine whether a withdrawal was due and payable. Under such circumstances, a mere request or even a demand, for the money owing on the certificate could not of itself create an inference that plaintiff was disputing defendant's contention that the money was not yet due, leaving out of consideration the essential element of good faith in making the dispute. Nor does the mere fact that plaintiff signed a receipt in full evidence or infer that a dispute existed. Nor would such a receipt be controlling as showing an accord and satisfaction had been effected. In the absence of a dispute or other consideration, the part payment received would only discharge the debt pro tanto. *Gray* v. *Bullen,* supra; *Smoot* v. *Checketts,* supra; *Aston* v. *Elkow,* 279 Mich. 232, 271 N. W. 742. Having pleaded an accord and satisfaction, the burden was upon defendant to prove such defense. *Peal* v. *Gulf Red Cedar Co. of California,* 15 Cal. App. 2d 196, 59 P. 2d 183; *Anderson* v. *Sanitary Dairy,* 160 Wash. 647, 295 P. 925; *Gooldy* v. *J. B. Klein Iron & Foundry Co.,* 170 Okl. 466, 40 P. 2d 1070; *Warner Elevator Mfg. Co.* v. *Higbee,* 53 Ohio App. 546, 5 N. E. 2d 947; 1 C. J. S., Accord and Satisfaction, p. 558, § 48.

The defendant relies strongly upon the case of *Sigler* v. *Sigler,* 98 Kan. 524, 158 P. 864, 868, L. R. A. 1917A, 725, which case involved a purchase of a note from the payee by a third party with his own money but as agent of the maker who later repaid said third party. It was there held that, where "the money is advanced by the third party and accepted by the creditor in satisfaction of the debt, it is a good accord and satisfaction"; that, by getting such payment, the payee received something he might not otherwise have received, and this constituted such a benefit to him as would be a sufficient consideration to support the accord and satisfaction. That case is distinguishable from the instant case, as here the money which was paid to plaintiff was supplied

by defendant to its agent beforehand. It is not necessary, therefore, to discuss the rule applied in the Sigler Case.

In the case of *Bourgeois* v. *Edwards,* N. J. Ch., 104 A. 447, it is stated that a purchase by a debtor of his debt for a lesser sum than the amount due does not liquidate it; there is a want of consideration. To the same effect is *Shaw* v. *Clark,* supra.

Since there was in fact no dispute between the parties, the conclusion of the trial court that there was an accord and satisfaction cannot be sustained on such theory. However, defendant urges that, even though there was no dispute, yet there was an accord and satisfaction under the rule stated in 1 C. J. 544, as follows:

"It has been held that payment and acceptance of less than the face value of a note in full satisfaction thereof, and surrender of the note to the debtor for cancellation, amount to an accord and satisfaction, as a surrender is equivalent to a release under seal." See, also, 1 Am. Jur. p. 240, § 44.

Defendant also relies on section 61-1-121, R. S. 1933, which covers the discharge of a negotiable instrument under the Uniform Negotiable Instruments Law. Defendant contends that a stock certificate has become so far a negotiable instrument under our Uniform Stock Transfer Act, c. 3, title 18, R. S. 1933, as to be dischargeable in the manner prescribed by section 61-1-121, citing the concurring opinion of Mr. Justice Folland in *Adams* v. *Silver Shield Min. & Mill. Co.,* 82 Utah 586, 21 P. 2d 886. In considering a similar section of the Negotiable Instruments Act, the Supreme Court of Tennessee in *Henson* v. *Henson,* 151 Tenn. 137, 268 S. W. 378, 380, 37 A. L. R. 1131, quoted with approval the following from *Lockhart State Bank* v. *Baker,* Tex. Civ. App., 264 S. W. 566, 568:

"It is evident that it was the intention of the Legislature to incorporate in this article of the statute the common-law rules as announced by textwriters and adjudicated cases of both England and America, which declared that a contract might be released by a formal instrument for that purpose without the necessity of showing a con-

sideration therefor; or upon payment of a less consideration than provided in the contract and a surrender to the debtor of the instrument evidencing the contract for cancellation; such was considered in law equivalent to a release in writing."

Notwithstanding the trial court did not base its decision upon the legal principles enunciated by the above-mentioned authorities and those urged by defendant in seeking to apply the rules enacted under the Negotiable Instruments Law, it becomes our duty to consider the same. Even though the trial court entered its judgment upon an ■ erroneous basis, still, if such judgment is properly supported upon some other basis which is disclosed by the pleadings and evidence, we should not reverse it.

We have not been able to discover any cases which have applied the rule that the part payment and a surrender of the instrument evidencing the debt for cancellation constitute an accord and satisfaction to any instrument other than a promissory note. Such rule, as applied to a note, seems to be an exception which a few of the courts have created to the general rule that an accord and satisfaction must be supported by a new consideration. It is based upon the proposition that the surrender for cancellation is the equivalent of a release under seal, and is really a more efficient safeguard than such release as the latter might be lost. It would seem that if a new consideration is necessary to support an accord and satisfaction that the exception just stated is somewhat illogical. A sealed instrument imports consideration, so that the giving of a release under seal does not constitute a departure from the rule requiring a new consideration to support an accord and satisfaction. The Negotiable Instruments Law has provided that a negotiable instrument is discharged when "the principal debtor becomes the holder of the instrument at or after maturity in his own right." Rev. St. 1933, 61-1-121 (5). The discharge is not denominated by the statute as having resulted from an accord and satisfaction. Whether it is to be regarded as having so resulted need not be decided in this case.

Nor need we decide whether the building and loan certificate here involved is a negotiable instrument coming within the provisions of Section 61-1-121, R. S. 1933, or whether the rule above referred to, independent of the Negotiable Instruments Law, Rev. St. 1933, 61-1-1 et seq., that an accord and satisfaction results from a part payment and surrender of a note for cancellation, should be applied to the instrument here involved. For, if it be conceded that the part payment and the surrender of the certificate for cancellation should be regarded as an accord and satisfaction, still any such accord and satisfaction is avoided by reason of the .facts disclosed in this case and defendant should not be permitted to rely thereon.

Where the accord and satisfaction relied upon was procured by fraud or misrepresentation or by mutual mistake, it is not binding. 1 C. J. 569, 570; 1 C. J. S., Accord and Satisfaction, pp. 546, 547; 1 Am. Jur. pp. 222, 256. The evidence discloses, and the trial court found, that, when plaintiff presented its certificate for payment, defendant refused to pay and represented to plaintiff that it was not due and payable, that there still remained approximately $50,000 in other similar certificates awaiting withdrawal ahead of plaintiff's certificate, and that it was problematical when plaintiff's certificate would be paid. These representations were all untrue. Plaintiff's certificate was in fact due and payable. Only $20,000 in similar certificates were awaiting withdrawal ahead of plaintiff's certificate, and plaintiff's certificate should have been paid forthwith as a matter of legal right. The evidence shows, and the court found, that plaintiff relied upon these representations, and without further knowledge or investigation sold its certificate to the Atlas Realty Company. As heretofore pointed out, whether plaintiff's certificate was in fact due and payable and whether other certificates were listed for withdrawal ahead of plaintiff's, were matters peculiarly and exclusively within the knowledge of defendant. Its books and records alone would re-

veal those facts, and certainly it was bound to know what these would reveal. The effect of the giving of such false information could not be nullified by finding that it was not given for the purpose of misleading plaintiff or inducing it to rely upon it to its damage. That the plaintiff relied on this information is clear. If the representations were untrue and known to be untrue, the fraudulent intent is presumed. Smith on Fraud, § 262 (d). There is no finding, and no justification in the evidence for a finding, that defendant did not know the information given plaintiff was untrue. On the contrary, the untruthfulness of these statements was proved by defendant's own records. There could be, under such circumstances, no ground for defendant believing the representations made by it to be true. The representations concerned material facts, and they were relied upon by plaintiff.

In *Hull* v. *Flinders,* 83 Utah 158, 27 P. 2d 56, we held that, where such representations were untrue and known to be untrue by defendant at the time they were made, they would sustain an action in deceit. Furthermore, "the unqualified assertion of what one does not know to be true is equivalent to and as unjustifiable as the assertion of a known falsehood." 26 C. J. 1110; *Consolidated Wagon & Mach. Co.* v. *Kay,* 81 Utah 595, 610, 21 P. 2d 836. If defendant did not know its representations were untrue, it certainly did not know them to be true, and yet it gave the information contained therein as if they were true. "A person is responsible for what he represents to be true whether he knows the same to be false or not." *Chicago Fraternal Life Ins. Ass'n* v. *Herring,* supra.

In addition to the misrepresentation of facts made to plaintiff above referred to, the defendant, after having refused to pay plaintiff's certificate, and unknown to plaintiff, that same day furnished its agent with the sum of $2,200 nearly enough to have paid said certificate, with which to acquire said certificate and others for a fraction of their face value. And this was done at a time when defendant as-

serted it was not paying withdrawals as it was using funds to liquidate certain creditor debts, most of which debts, as a matter of fact, were not pressing and did not require payment. The profit realized from the transaction was used to offset a loss in book value resulting from the sale of certain real property, resulting in a distinct benefit to the defendant and its remaining shareholders. It is urged that the policy of the defendant to discontinue payment of withdrawals and apply its receipts to certain creditor debts had the approval of the bank commissioner of Utah. But, while that might furnish a basis for assuming defendant was pursuing this policy for the good of itself and investors, it certainly could not affect the rights of withdrawing certificate holders who were entitled to be paid according to their contracts and the law applicable thereto, there being no intimation or assertion that defendant was insolvent or was being administered by the banking department of the state. *Smith* v. *Oklahoma City Bldg. & Loan Ass'n,* 179 Okl. 9, 64 P. 2d 281.

We conclude, from what has been said, that there was no accord and satisfaction binding upon plaintiff, and that in the facts of this case it would be highly unjust to permit the defendant to retain that which otherwise should have been paid to plaintiff. We do not find anything in the record that should estop plaintiff from recovering the balance unpaid on the certificate. Plaintiff relied upon the information given it by defendant and so was induced to sign the receipt acknowledging payment in full. The records of the defendant revealed that plaintiff's certificate was due and payable and defendant had funds on hand with which to pay it. Defendant knew it could not adopt a policy which would defeat the rights of the certificate holders to their money in their proper turn under the law. There could be no room for an honest dispute as to defendant's present liability for the amount of the certificate at the time plaintiff last requested payment. The payment of $1250.00 must be considered only as a payment on ac-

count. *Weber* v. *Head Camp, Pacific Jurisdiction, Woodmen of the World,* 60 Colo. 529, 154 P. 728.

Let it be assumed that there was an accord and satisfaction effectuated by reason of the surrender and cancellation of the certificate, as defendant contends there was, it would not be necessary for the plaintiff to restore the money already received before it could bring the present action. "Restitution is not a condition precedent where plaintiff is in any event entitled to the amount received by him or the amount received does not exceed that which is admitted or conceded to be due plaintiff." 1 C. J. S., Accord and Satisfaction, p. 547. Under the evidence, plaintiff was entitled to the amount which it did receive and defendant does not dispute its right to the amount so paid or the amount of the debt actually owing at the time demand for payment was made.

We have still to discuss the matter of pleading. As stated, the defendant was permitted to file its amendment to its answer, setting up the defense of accord and satisfaction, after the case had been submitted to the court for decision. No reply was filed, but under the circumstances it would only be fair to consider that plaintiff had pleaded by way of reply the facts necessary to avoid the defense of accord and satisfaction. Sufficient allegations of that nature were contained in the complaint, and the evidence adduced at the trial clearly proved them, so that defendant is under no disadvantage.

We have already referred to the evidence relative to the delivery of the certificate by plaintiff to defendant's agent and are satisfied with the conclusion that what was done amounted to the acquisition by defendant of one of its outstanding obligations for the purpose of extinguishing the same. Under such view the money paid is to be regarded as having been paid pursuant to the obligation and for the purpose of extinguishing the same. This result is in harmony with the cases of *Sigler* v. *Sigler, Bourgeois* v. *Edwards* and *Shaw* v. *Clark,* supra, relied upon by the respec-

tive parties, as they all proceed upon the theory that, though there was what is designated in the record as a "purchase" of the obligation involved, the legal effect of the transaction should be determined by regarding the money paid as received as payment of or on the debt.

The complaint alleges facts showing that the face amount of the certificate was due and payable; that defendant refused to pay it, and informed plaintiff it was not paying anything on withdrawals; that plaintiff received half of the amount due and payable through a transaction under which it delivered the certificate to an agent ■ of the defendant who had been supplied with funds by defendant for the purpose of obtaining and canceling the certificate and the indebtedness evidenced thereby, and that the certificate was thus acquired by defendant for its own use and benefit; that, as a result plaintiff lost $1250.00. By its amendment to the answer, defendant alleged that the payment thus made to plaintiff was made in pursuance of an accord and satisfaction. Such amendment injected the theory of payment into the case and characterized the transaction by which defendant obtained said certificate from plaintiff. The allegations of the complaint above summarized, disregarding the allegations of fraud, are sufficient to sustain an action for the balance unpaid, the defense of accord and satisfaction being unavailing. *Hull* v. *Flinders*, supra. The action is upon the promise to pay a sum certain, such sum having become due and payable. The evidence developed by both parties discloses that there was a debt due and owing, that only part had been paid, and that such part had been paid under such circumstances as left the remainder still due and owing. While the complaint contains allegations concerning fraudulent misrepresentations and actions on the part of defendant, the same may be regarded, under the allegations and circumstances of this case, as in explanation of the manner in which the transaction was consummated, rather than characterizing the nature of the cause of action relied upon as being in de-

ceit. There can be no prejudice to defendant if that view is taken and the action regarded as one for the recovery of the balance unpaid, since defendant itself took the definite position that plaintiff could not recover because it had been paid in full in pursuance of an agreement of accord and satisfaction, which is wholly inconsistent with its original position that it had acquired the certificate from a third party who had purchased it from plaintiff. We conclude, therefore, that the pleadings and the evidence are sufficient to entitle plaintiff to recover upon the theory that the debt owing by defendant under the certificate has not been liquidated since there has been no accord and satisfaction.

As before, indicated, our law as to the amount which a building and loan association can be required to pay on withdrawals was changed by a statute which became effective June 26, 1933, about 26 months before plaintiff made its last request for payment. Prior to that date, one-half the monthly receipts were made applicable to withdrawals. Since that date only one-half of the net monthly receipts can be required to be paid on withdrawals. However, under the evidence, it is clear that the certificate was due and payable on August 24, 1934, even though plaintiff's withdrawal right should be considered as being predicated upon half the monthly receipts of defendant until June 26, 1933, and one-half the net monthly receipts thereafter to August 24, 1934. Likewise, the court found, and we think the evidence supports such finding, that one-half the gross receipts of the defendant "for each month during the period following the filing of plaintiff's certificate for withdrawal until July 1, 1933, exceeded in amount the total withdrawal value of said certificate and all other certificates filed for withdrawal prior to the date when said certificate was filed for withdrawal," even though borrowed money be excluded from receipts.

Indeed, we think the evidence also would justify the same finding as of June 26, 1933. It thus appears that plaintiff's certificate should have been paid by July 1, 1933, had de-

fendant applied to withdrawals listed ahead of plaintiff's the funds received by it up to that time, which it was required by law to apply to the payment of withdrawals.

In view of this situation, it is not necessary to decide whether plaintiff's withdrawal rights were or could be modified or affected by the new enactment which required application only of one-half the net monthly receipts. The reader is referred to *Treigle* v. *Acme Homestead Ass'n,* 181 La. 941, 160 So. 637, 98 A. L. R. 69, which was reversed by the United States Supreme Court in 297 U. S. 189, 56 S. Ct. 408, 80 L. Ed. 575, 101 A. L. R. 1284, and to the note in 98 A. L. R. 82, as touching somewhat upon the principles which would be involved in such question.

It thus appears that plaintiff's certificate was due and payable beyond dispute as of July 1, 1933, as found by the trial court. The amount remaining unpaid and owing thereon and which plaintiff is entitled to recover, namely, $1,250, is certain. In addition, plaintiff is entitled to interest at the legal rate on such amount from July 1, 1933, ■ at which time it is admitted it was due and payable. *Rogers* v. *Ogden Building & Savings Ass'n,* 30 Utah 188, 83 P. 754; *Sperling* v. *Euclid Bldg. & Loan Ass'n,* 308 Pa. 143, 162 A. 201; *Enterprise Bldg. & Loan Society* v. *Bolin,* 12 Colo. App. 304, 55 P. 740; *Smith* v. *Oklahoma City Bldg. & Loan Ass'n,* supra.

The parties have devoted considerable discussion to the right of defendant to purchase its outstanding capital stock. Because of the views already expressed, it is not necessary to discuss this question. The questions presented by this appeal are purely legal. Inasmuch as there are no fact questions remaining in issue to be determined ■ upon a retrial in so far as plaintiff's right to recover the sum of $1,250 and interest is concerned, no good purpose, therefore, would be subserved in remanding the case to the lower court for retrial. *Stewart* v. *Heywood,* 62 Utah 466, 220 P. 717; *Kelly* v. *Moab State Bank,* 64 Utah

290, 230 P. 566; *Weber* v. *Head Camp, Pacific Jurisdiction, Woodmen of the World,* supra.

Accordingly, the judgment of the trial court is reversed and the cause remanded, with directions to the trial court to prepare and enter findings of fact, conclusions of law, and judgment in favor of plaintiff and against defendant in the sum of $1,250, with interest thereon at the legal rate from July 1, 1933, and costs. Appellant to recover its costs on this appeal.

FOLLAND, C. J., and MOFFAT and LARSON, JJ., concur.

WOLFE, Justice (concurring).

I concur. I recognize that the pleadings in this case present considerable difficulties and perhaps require what appears to be a devious course in arriving at the correct result.

It seems to me clear that plaintiff was not only a creditor, but a creditor entitled to participate in a variable fund; it was entitled to have applied to its indebtedness, in the order of filing of withdrawals, part of the moneys which fed this fund; and it is not now disputed that the fund was sufficient to liquidate at par plaintiff's certificate on July 1, 1933, when plaintiff was the owner of the certificate and requesting that it be paid.

While a creditor and debtor may deal at arm's length, and the debtor in the open market may buy in certificates of indebtedness, such as bonds, if it does not deliberately depress the market for that purpose, it always owes its creditor correct information as to the status of a fund to which his indebtedness may resort; and in this case it is not now disputed by the parties that the defendant company furnished plaintiff, owner of a matured certificate in defendant company, with information relied upon by plaintiff which upon subsequent investigation was shown to be incorrect and untrue.

Plaintiff alleged that the action taken in this case by defendant, including the giving of misinformation and the

subsequent acquisition of plaintiff's certificate by means of an undisclosed agent, was part of a plan purposely designed to accomplish the result of depressing the market, discouraging plaintiff, by misleading it into thinking that its turn had not come to liquidate an obligation from the fund available for that purpose, resulting in inducing plaintiff to part with its indicia of indebtedness for one-half of what the debtor was at that time under obligation to pay and able to pay. If this were the case, it presents a plain case of overreaching. We need go no further. A principle quite ultimate has been violated. A debtor so actively misleading the creditor to the benefit of the one and the detriment of the other would be violating a most fundamental legal concept and one which reaches back to the moral law crystallized in the Ten Commandments.

The trial court before which the facts of this case were fully presented found these issues against plaintiff, and that there was no scheme or intention on the part of defendant to misstate facts or defraud plaintiff. The fact remains, however, that defendant did furnish to plaintiff information vitally important to plaintiff under the circumstances, which information proved to be incorrect and untrue, and there resulted a substantial loss to plaintiff which ultimately accrued to defendant when it acquired the indicia of indebtedness from plaintiff. Under such circumstances, even though the result came from an innocent or careless impartation of information followed by the subsequent acquisition of plaintiff's certificate and not from a deliberate design on the part of the defendant, the defendant debtor cannot profit from his creditor. For restitution of this loss was the complaint filed, and such restitution do we decree.