**NEVADA HALF MOON MINING CO. v.
COMBINED METALS RE-
DUCTION CO.**

No. 3845.

United States Court of Appeals
Tenth Circuit.

July 23, 1949.
Rehearing Denied Sept. 12, 1949.

**74**

. . Edward W. Clyde, Salt Lake City, Utah (Woodrow D. White and Allan E. Mecham, Salt Lake City, Utah, on the brief), for appellant.

· Herbert Van Dam, Salt Lake City, Utah (Edgar C. Jensen, Salt Lake City, Utah, on the brief), for appellee.

Before BRATTON, HUXMAN and MURRAH, Circuit Judges.

BRATTON, Circuit Judge. ·

By separate deeds executed in 1929, Nevada Half Moon Mining Company, hereinafter referred to as Nevada, and M. C. Godbe, conveyed to Combined Metals Reduction Company, hereinafter referred to as Combined, certain mining claims in Nevada which they separately owned. And as an integral part of the transaction the three parties entered into a joint written contract, but inasmuch as Godbe is not presently involved no further reference will be made to him. The contract provided among other things that Combined should endeavor diligently to develop the property and produce and ship ores from it. It further provided that Combined should market the ores, or in the alternative should purchase and treat them at its plant, but before making such purchase or entering into any contract for the sale of the ores it should submit to Nevada its proposed offer or contract, and within twenty days after receipt of the offer Nevada should either provide a contract on better terms or be deemed to accept the offer or proposed con-

tract of Combined. It further provided that Combined should pay to Nevada a royalty of two and one-half per cent of the net mill or smelter returns from the sale or disposal of the ores mined and produced from any of the property, such payments to be made for a period of ten years from and after the commencement of actual mining operations. And it further provided that the net mill or smelter returns as used therein should mean the net amount paid for the ores by the milling or smelter company to whom they were sold, after deducting all charges for treatment, transportation, sampling, and assaying. The parties subsequently agreed that the effective date of the ten-year period should commence on July 1, 1942. Combined produced ores from the property, processed them at its plant, sold the processed products, and paid to Nevada a royalty of two and one-half per cent of the mill returns under the schedule then in force and effect.

Pursuant to an Act of Congress, 50 U.S. C.A. Appendix, § 901, et seq., the Administrator, Office of Price Administration, placed a ceiling on certain minerals; and by administrative action, Metals Reserve Company, a wholly owned agency of the United States, paid to Combined certain sums representing premium or subsidy payments for ores produced from the property to which reference has been made. · These payments began in 1942 and ended in 1947. Combined refused to pay Nevada any royalty on the sums received from Metals Reserve Company and Nevada instituted this action to recover for such royalty. The cause was tried to the court without a jury. Judgment was entered for Combined, and Nevada appealed.

The first question to which the parties address themselves is whether Combined was liable to Nevada for payment of so-called royalty on the sums received from Metals Reserve Company. The purpose of a written contract is to evidence the terms upon which the minds of the parties meet and unite at the time they enter into it. And where its terms are plain and unambiguous, there is no room for construction. . But where the meaning of a

contract is doubtful, the function of judicial interpretation is to ascertain the mutual intention of the parties, and when that is found it prevails over verbal inaccuracies, careless recitals, inapt expressions, or dry words of stipulation. The court should, as far as possible, place itself in the position of the parties at the time of the execution of the agreement, and then from a consideration of the writing itself, its purposes, and the circumstances surrounding its execution endeavor to ascertain and give effect to their intention. New York Casualty Co. v. Sinclair Refining Co., 10 Cir., 108 F.2d 65. The intention of the parties, when manifest, or when ascertained from the written agreement in accordance with basic canons of interpretation, must control and be enforced unless it is directly contrary to the plain sense of the binding words of the agreement. A. Leschen & Sons Rope Co. v. Mayflower Gold Mining & Reduction Co., 8 Cir., 173 F. 855, 35 L.R.A.,N.S., 1.

■ The cold language contained in a written agreement, standing alone, is not always controlling. General Finance Corp. v. Dillon, 10 Cir., 172 F.2d 924. That which is necessarily implied in a contract is as much a part of it as though expressly stated therein, but the implication must result from the language employed in the instrument and be indispensable to carry the intention of the parties into effect. If it is clear from all the pertinent parts or provisions of the contract taken together and considered in the light of the facts and circumstances surrounding the parties at the time of its execution, that the obligation in question was within the contemplation of the parties or was necessary to carry their intention into effect, it will be implied and enforced. Sacramento Nav. Co. v. Salz, 273 U.S. 326, 47 S.Ct. 368, 71 L.Ed. 663. And a contract should not be so narrowly or technically interpreted as to frustrate its obvious design or so loosely construed as to relieve a party of an obligation or liability fairly within its scope or spirit. Davison Chemical Co. v. Baugh Chemical Co., 133 Md. 233, 104 A. 404, 3 A.L.R. 1.

■ The transaction between these parties was not a lease of the mining claims. It was a sale of the property. And it is manifest from the contract and the circumstances surrounding its execution that the parties intended and understood that the purchase price to be paid for the property should represent and be two and one-half per cent of the returns accruing to Combined from the ores produced during the period of ten years after production began, less the cost of transportation, treatment, sampling, and assaying. The provision that the percentage factor should be applied to the net mill or smelter returns and defining such returns to mean the net amount paid for the ore by the milling or smelter company to whom it was sold, after deducting all treatment, transportation, sampling, and assaying charges was merely a yardstick to be employed in arriving at the amount of the royalty due under ordinary business practices. It was not the purpose of that provision to exclude from consideration in computing the royalty other revenues accruing to Combined as the proximate result of the production of ores extracted from the premises.

The contract did not make express reference to the premium or subsidy payments subsequently made by Metals Reserve Company to Combined as a means of encouraging increased production of metals from the property. In the very nature of things that was not done because at the time of the execution of the contract it was not anticipated or foreseen even remotely that payments of that kind would in later years be made to the producers of metals. But the sums which Metals Reserve Company paid to Combined accrued to the latter as the proximate result of the production and processing of ores extracted from the premises as much as though they had been received from the purchaser of the ores. Viewed in that manner, such sums were the equivalent of returns for the ores within the scope of the contract. Cf. Combined Metals Reduction Co. v. State Tax Commission, Utah, 176 P.2d 614; United States Smelting, Refining & Mining Co. v. Haynes, Utah, 176 P.2d 622; Salt Lake County v. Kennecott Copper Corp., 10 Cir.,

163 F.2d 484, certiorari denied 333 U.S. 832, 68 S.Ct. 458, 92 L.Ed. 1116. And inasmuch as they were the equivalent of returns from the production and processing of ores extracted from the premises within the scope of the contract, Combined was liable to Nevada for payment of the royalty thereon.

■ The remaining question is whether the payment of the royalty based on the mill returns under the schedule then in force and effect constituted an accord and satisfaction which discharged Combined from any obligation to account to Nevada for the royalty on sums received from Metals Reserve Company. Subsequent to the beginning of mining operations on the property and prior to the institution of this action, Combined made fifty-seven royalty payments to Nevada, some being made after the controversy arose between the parties as to the liability of Combined for the payment of royalty on the sums received from Metals Reserve Company. Each payment was made by check with voucher attached, and each check recited that it was in full of the items listed on the voucher. Each voucher recited "royalty per statement attached", and attached thereto was a statement showing "mill lot", "mine lot", and "amount". Also attached was a copy of a settlement sheet for each lot of ore listed on the statement. And the checks were accepted, endorsed, and cashed. The essential elements of an effective accord and satisfaction are proper subject matter, competent parties, meeting of the minds of the parties, and consideration. And its most common pattern is a mutual agreement between the parties in which one pays or performs and the other accepts payment or performance in satisfaction of a claim or demand which is a bona fide dispute. Browning v. Equitable Life Assurance Society, 94 Utah 532, 72 P.2d 1060; Ralph A. Badger & Co. v. Fidelity Building & Loan Ass'n, 94 Utah 97, 75 P.2d 669; Saulsbury Oil Co. v. Phillips Petroleum Co., 10 Cir., 142 F.2d 27, certiorari denied 323 U.S. 727, 65 S.Ct. 62, 89 L.Ed. 584.

■ The checks, vouchers, and settlement sheets which Combined delivered to Nevada were in the same form both before and after the controversy arose respecting the payment of royalty on the sums received from Metals Reserve Company. There was no change in them. And it is too clear for tenable argument otherwise that they were tendered and received solely and exclusively in payment of the royalty on the ores computed on the basis of mill returns under the schedule then in force, without any reference to the sums received from Metals Reserve Company. They were not tendered and received with the mutual understanding and agreement that they should be in settlement of the claim or demand of Nevada for the payment of royalty on the premium or subsidy payments made by Metals Reserve Company. Therefore, under accepted principles of applicable law they did not constitute an effective discharge of Combined's obligation to pay such royalty. Moore & McCormick Co. v. Valley Camp Coal Co., 4 Cir., 37 F.2d 308; Bellingham Securities Syndicate v. Bellingham Coal Mines, 13 Wash.2d 370, 125 P.2d 668.

The judgment is reversed and the cause remanded for further proceedings not inconsistent with the views herein expressed.